[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 13, 2012
JOHN LEY
CLERK

_____

No. 10-14382

_____

D.C. Docket No. 2:10-cr-14017-KMM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MARC DENNIS VADNAIS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(January 13, 2012)

Before EDMONDSON and BARKETT, Circuit Judges, and FULLER,* District
Judge.

---

* Honorable Mark E. Fuller, United States District Judge for the Middle District of
Alabama, sitting by designation.

BARKETT, Circuit Judge:

Marc Dennis Vadnais appeals his 240-month sentence imposed after pleading guilty to knowingly receiving child pornography, in violation of 18 U.S.C. § 2252(a)(2). He argues that the district court erred by applying a five-level enhancement, pursuant to U.S.S.G. § 2G2.2(b)(3)(B), which provides for the enhancement if the offense involves distribution of child pornography "for the receipt, or expectation of receipt, of a thing of value."[1] Vadnais obtained child pornography through the installation and use of the peer-to-peer file-sharing software LimeWire. He argues that simply using Limewire does not support a finding that the distribution of his child pornography files was done for the purpose of expecting to receive a thing of value in return.

## I. Background

For purposes of sentencing, Vadnais admitted that he installed LimeWire's peer-to-peer file-sharing software and used it to download the child pornography files of other LimeWire users to his computer. Once installed, LimeWire's default file-sharing setting automatically placed the downloaded files in a shared folder on his computer, making them available to other LimeWire users. It was through this

---

[1] "We review the district court's findings of fact for clear error and its application of the Sentencing Guidelines de novo." United States v. Newman, 614 F.3d 1232, 1235 (11th Cir. 2010).

2

feature of LimeWire that the government investigator accessed Vadnais's pornography files.

The sentencing guidelines applicable to Vadnais's offense for receipt of child pornography provides for a two-level enhancement when the offense involves distribution. U.S.S.G. § 2G2.2(b)(3)(F). Specifically, distribution is defined by the guidelines as "any act . . . related to the transfer of material involving the sexual exploitation of a minor." § 2G2.2, comment. (n.1).

However, the sentencing guidelines provide for greater enhancements when the distribution involves additional specified circumstances. See U.S.S.G. § 2G2.2(b)(3)(A)-(E). A five-level enhancement may be imposed when the distribution is "for the receipt, or expectation of receipt, of a thing of value." § 2G2.2(b)(3)(B). This enhancement is defined as "any transaction, including bartering or other in-kind transaction, that is conducted for a thing of value, but not for profit." § 2G2.2, comment. (n.1). Moreover, a "thing of value" can include the "child pornographic material received in exchange for other child pornographic material bartered in consideration for the material received." Id. See also United States v. Bender, 290 F.3d 1279, 1286 (11th Cir. 2002) (holding that "when a defendant trades child pornography in exchange for other child pornography, the defendant has engaged in distribution for the receipt, or

3

expectation of receipt, of a thing of value," necessary to impose the five-level enhancement) (internal quotation marks omitted).

At sentencing, Vadnais did not dispute that he was subject to a two-level enhancement for distribution of child pornography as a result of the shared folder on his computer, but argued that these facts did not support the five-level enhancement for distribution for receipt, or expectation of receipt, of a thing of value. Accordingly, the issue before us is whether Vadnais's use of peer-to-peer file-sharing software to obtain child pornography files from other users in a manner that permitted other users to obtain child pornography files from his shared folder supports the application of the five-level enhancement of § 2G2.2(b)(3)(B).

## II. Discussion

As the Supreme Court has recognized, peer-to-peer networks are "so called because users' computers communicate directly with each other, not through central servers." Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 545 U.S. 913, 919-920 (2005). The software permits users to search for files located in the shared folder that is created by the software on the computers of other users, and when found, the requesting user can download the file directly from the computer located. Id. at 921. "The copied file is placed in a designated sharing folder on

4

the requesting user's computer, where it is available for other users to download in turn, along with any other file in that folder."  Id.  In particular, LimeWire has been described to function as follows:

> LimeWire is a file-sharing program that utilizes "peer-to-peer" ("P2P") technology. By employing P2P technology, LimeWire permits its users to share digital files via an Internet-based network known as the "Gnutella network."  LimeWire users can share almost all files stored on their computers with other LimeWire users.  When a LimeWire user wishes to locate digital files available through the network, she enters search criteria into the search function on LimeWire's user interface.  LimeWire then scans the computers of other LimeWire users, to locate files that match the search criteria. The LimeWire user can download any files that LimeWire locates. When the user downloads a file, LimeWire transfers a digital copy of the file from the computer on which it is located to the LimeWire user's computer.

Arista Records LLC v. Lime Group LLC, 784 F. Supp. 2d 398, 410-11 (S.D.N.Y. 2011) (footnote omitted).[2]   In addition, the district court in Arista Records noted that LimeWire encourages its users to share files and its "default settings make all files that a user downloads through LimeWire available to other LimeWire users

---

[2]  LimeWire was sued by several major music record companies for copyright infringement and is currently under a court-ordered injunction in Arista Records which prohibits it from distributing its software.  See LimeWire, http://www.limewire.com (last visited Oct. 12, 2011).  This description of LimeWire's functioning is taken from the district court's Amended Opinion and Order on the parties' motions for summary judgment in that litigation.

for download." Id. at 410 n.6.  However, a user may change the default settings.

"[A] user could turn off sharing altogether, designate another folder with a

different name to serve as the "Shared" folder, manually remove files from the

"Shared" folder (or whatever folder had been designated) and prevent them from

being shared on an individual basis." United States v. Lewis, 554 F.3d 208, 211

(1st Cir. 2009).

Vadnais does not dispute that his use of LimeWire involved distribution

sufficient for the two-level enhancement under § 2G2.2(b)(3)(F) as defined to be

"any act . . . related to the transfer of material involving the sexual exploitation of

a minor." § 2G2.2, comment. (n.1).  This enhancement is based on Vadnais's

downloading of child pornography files from other LimeWire users which were

automatically placed in his shared folder based on the default file-sharing setting,

and therefore, were retrievable by other LimeWire users.

However, logic compels the conclusion that more must be required for the

five-level enhancement.  There must be some other evidence, whether direct or

circumstantial, that a defendant reasonably believed that he would receive

something of value by making his child pornography files available for

distribution through a peer-to-peer network.  Such evidence must show the

connection between the defendant's distribution and the receipt or expectation of

6

receipt of a thing of value. As other courts have found, simply using a peer-to-peer program is not itself sufficient to trigger the five-level enhancement. See United States v. Durham, 618 F.3d 921, 931 (8th Cir. 2010) ("[W]e have explicitly rejected any suggestion we automatically apply a [§ 2G2.2(b)(3)(B)] enhancement based merely on a defendant's use of a file-sharing program."); United States v. Geiner, 498 F.3d 1104, 1111 (10th Cir. 2007) (concluding that the enhancement does not automatically apply to a defendant who downloads and shares child pornography via a peer-to-peer network). Indeed, the government concedes that the use of the peer-to-peer software alone is not enough. Thus, because the five-level enhancement imposes the additional requirement that the distribution occur for a specified purpose, we agree that a defendant's mere installation and use of a peer-to-peer network to download child pornography into the user's shared folder does not as a matter of law support the application of § 2G.2.2(b)(3)(B).

The government essentially argues, and the district court found, that the necessary evidence for the five-level enhancement showing the intent to receive a "thing of value" was the fact that Vadnais did not turn off the file-sharing feature, thus making his files available to others through his shared folder. This failure, the government argues, demonstrates that Vadnais expected to receive additional child pornography—a "thing of value"—for sharing his files. This conclusion,

however, does not follow from the evidence in this case and is not supportable based on the operation of file-sharing on a peer-to-peer network. Although LimeWire users can share files, users of this and other peer-to-peer networks are not obligated to do so in exchange for receiving and downloading files from other network users. LimeWire (and other peer-to-peer networks) permit so-called "freeloading"—that is, obtaining files from others without any requirement of providing files in return. Thus, whether Vadnais changed the default setting to preclude others from retrieving his files or left his files readily available to others, the availability of the files of other LimeWire users remained exactly the same to him. The inference that the district court made—that Vadnais expected to receive more child pornography because he shared his files—is not supported by the ordinary operation of the LimeWire file-sharing software. See Geiner, 498 F.3d at 1111 ("[A] defendant who distributes child-pornography files by sharing them on a file-sharing network does not necessarily do so in exchange for similar files, particularly when the defendant understands that these files are available even if he chooses not to share his own."). Therefore, even presuming that Vadnais knew about the default share feature[3] and intended it to remain enabled so other

---

[3] Vadnais argues that he did not know about the default share setting but that if he had known about it, he would have disabled it. The government argues, based on circumstantial evidence, that he was a sophisticated user and thus it was appropriate for the district court to infer

LimeWire users could access his files, this only establishes that Vadnais intended to distribute his files to other LimeWire users. These facts show nothing about what he expected in return, if anything. As a LimeWire user, because he did not need to share child pornography to get child pornography, we cannot infer that his use of the share feature (even if intentional) was done with the expectation of receiving child pornography. Indeed, assuming Vadnais is the sophisticated computer user that the government contends, this would support the opposite inference: that Vadnais had no expectation of receiving any more child pornography merely by sharing his files because he would have known that he could download child pornography whether or not the file-sharing feature was enabled. Therefore, while the facts on this record clearly support the two-level distribution enhancement, they cannot support the additional inference that the distribution was for the expectation of receiving a thing of value necessary for the five-level enhancement.

This is not to say that evidence could never be available in a particular case to support a finding that a defendant who shared files on a peer-to-peer network

that Vadnais was well aware of the share feature and that he affirmatively chose not to disable the default setting. As explained herein, however, whether or not Vadnais intended to share his child pornography files is irrelevant to whether his use of LimeWire, even with the share feature activated, supports the conclusion that his distribution of child pornography files was for the receipt or expectation of receipt of a thing of value.

did so with the expectation of receiving a "thing of value" in return. For example, the Tenth Circuit found that the five-level enhancement was warranted in a case where there was direct evidence that the defendant shared his files only after he came to believe that doing so would allow him to download child pornography from other users at a faster speed. The court explained that although the defendant's sharing of files did not support a finding that he expected more child pornography in return, it did show that he expected faster download speed, which the court concluded was a "thing of value." See Geiner, 498 F.3d at 1110 ("In other words, [the defendant] made his files available to others on the network in anticipation of a faster downloading speed."). Here, however, the government presented no evidence, nor do we find any on this record, that Vadnais expected to receive any other "thing of value."

Accordingly the district court clearly erred in applying the five-level enhancement for distribution for the expectation of the receipt of a thing of value. We, therefore, vacate Vadnais's sentence and remand to the district court for re-sentencing consistent with this opinion.

**SENTENCE VACATED and REMANDED FOR RE-SENTENCING.**