[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-12629
Non-Argument Calendar

_____

D.C. Docket No. 6:12-cr-00234-CEH-TBS-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ANDREW BEASLEY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(March 28, 2014)

Before HULL, PRYOR and MARTIN, Circuit Judges.

PER CURIAM:

Andrew William Beasley appeals his total 115-month sentence imposed after he pled guilty to one count of receipt of child pornography, in violation of 18 U.S.C. § 2252A(a)(2)(A) and (b)(1), and one count of possession of child pornography, in violation of § 2252A(a)(5)(B) and (b)(2).  On appeal, Beasley argues that his 115-month sentence, 36 months below the advisory guidelines range: (1) is procedurally unreasonable because the district court miscalculated his offense level under U.S.S.G. § 2G2.2(b); and (2) is substantively unreasonable.  After review, we affirm.

## I.  BACKGROUND FACTS

### A.    Beasley's Offenses

In January 2012, a special agent conducting an online child pornography investigation located an IP address for a computer that possessed image and movie files previously identified as child pornography in other investigations.  After entering the IP address into the Internet Crimes Against Children ("ICAC") database, the special agent found that the IP address had logged on to a peer-to-peer file sharing network called "E-Donkey" over "4,000 times from June 16, 2011 to February 17, 2012, with more than 1,000 different image or movie files on E-Donkey network."  After comparing those 1,000-plus files to those in the ICAC database, the special agent found two files, in particular, that were previously identified as child pornography and had file names indicative of child

2

pornography.  The special agent downloaded those two files from available "E-Donkey" network hosts.  The two files were videos containing child pornography.

After linking the IP address to Beasley's Florida residence, two special agents executed a search warrant there.  During his interview, Beasley initially denied downloading and viewing images of child pornography and offered to get his laptop and external media so the agents could preview it.  However, to preserve the forensic integrity of the evidence, agents told Beasley not to touch any computer equipment.  After being advised of his Miranda rights, Beasley admitted that he had collected images and videos of child pornography since the early 1990s and had over 40,000 child pornography images.

During the search, the agents found a Compaq laptop computer and a Dell computer in Beasley's room.  The laptop computer had an external hard drive where Beasley said he stored his child pornography collection on a file called "EMD," which stood for "eMule downloads."[1]  A forensic examination of the two computers revealed that: (1) the Dell computer contained 163 videos and 1,919 images depicting child pornography, some containing bestiality and bondage; (2) the Compaq laptop contained one movie and 226 images depicting child

---

[1]The presentence investigation report (PSI) referred to "E-Donkey."  At sentencing, the parties referred to eMule, which is a free peer-to-peer file sharing program for Microsoft Windows that connects to the eDonkey file-sharing network.

3

pornography; (3) the external hard drive contained 103 movies and 4,260 images depicting child pornography, some containing bestiality or bondage.

In total, Beasley's computers had 267 movies and 6,405 images of child pornography. The forensic examination revealed that on November 29, 2010, Beasley used eMule, a peer-to-peer file sharing program, to receive three movie files containing child pornography. [2]

## B.    Charges and Guilty Plea

The indictment charged Beasley with receipt of child pornography (Count One) and possession of child pornography (Count Two). Count One alleged that, on November 29, 2010, Beasley knowingly received three computer files (i.e., the three movies the forensic examination showed Beasley downloaded using a peer-to-peer file sharing program), that were shipped or transported by computer using the Internet. Count Two alleged that, on February 15, 2012, Beasley knowingly possessed computer images of child pornography that were shipped or transported by computer using the Internet.

---

[2]A peer-to-peer (or P2P) network allows users to share files directly over the Internet using a software program. United States v. Vadnais, 667 F.3d 1206, 1208 (11th Cir. 2012). "The software permits users to search for files located in the shared folder that is created by the software on the computers of the other users, and when found, the requesting user can download the file directly from the computer located. The copied file is placed in a designated sharing folder on the requesting user's computer, where it is available for other users to download in turn, along with any other file in that folder." Id. (quoting Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 545 U.S. 913, 919-21, 125 S. Ct. 2764, 2770-71 (2005) (citations and internal quotation marks omitted)).

Without a plea agreement, Beasley pled guilty to both counts.  At the plea hearing, Beasley stated that he knowingly downloaded images of child pornography.  Beasley admitted the government's factual basis for the plea, summarized above.

## C.    PSI

The probation officer's PSI recounted the facts contained in the government's factual basis for the plea.  The PSI calculated a total offense level of 34 under U.S.S.G. § 2G2.2.

Specifically, the PSI assigned Beasley: (1) an offense level of 22, pursuant to U.S.S.G. § 2G2.2(a)(2); (2) a two-level increase under § 2G2.2(b)(2) because the pornographic material involved a prepubescent minor; (3) a two-level increase, under § 2G2.2(b)(3)(F), because the offense involved distribution of child pornography, other than distribution for pecuniary gain, thing of value, or to a minor; (4) a four-level increase, under § 2G2.2(b)(4), because the offense involved material that portrayed sadistic or masochistic conduct; (5) a two-level increase, under § 3G2.2(b)(6), because the offense involved the use of a computer; and (6) a five-level increase, under § 3G2.2(b)(7)(D), because the offense involved over 600 images.  The PSI recommended a three-level reduction, pursuant to U.S.S.G. § 3E1.1, for acceptance of responsibility.

With a total offense level of 34 and a criminal history category of I, Beasley's advisory guidelines range was 151 to 188 months' imprisonment. Pursuant to 18 U.S.C. § 2252A(b)(1), Count One had a mandatory minimum sentence of five years and a maximum of twenty years. Pursuant to § 2252A(b)(2), Count Two had a maximum sentence of ten years.

## C.    Beasley's Objections

Beasley objected to paragraph 32 of the PSI, which applied the two-level "distribution" increase under U.S.S.G. § 2G2.2(b)(3)(F). Beasley also objected to the PSI's failure to give the two-level reduction under U.S.S.G. § 2G2.2(b)(1), which applies when the defendant's conduct is limited to solicitation or receipt of child pornography and the defendant "did not intend to . . . distribute" the child pornography. See U.S.S.G. § 2G2.2(b)(1).

As to distribution, Beasley contended that, although he used a peer-to-peer file sharing program, eMule, on his computer, "[t]here [was] no evidence that Mr. Beasley knowingly shared his files with others." Beasley pointed out that he "did not participate in internet chat rooms in which he traded images with others, and he did not purposely send images to others."

In addition, Beasley argued that the district court should vary downward and impose the mandatory minimum five-year sentence. As mitigating factors, Beasley stressed that: (1) he had no criminal history; (2) he suffers from pervasive

6

developmental delays, Asperger's Syndrome, ADHD, anxiety, and depression; (3) although he has an IQ of 137, he has the social maturity of a 15-year-old; (4) as a child, he became socially isolated due to his odd behaviors and instead socialized on the Internet; (5) he idolized his father, who was a sexual voyeur who exposed his son to child pornography at an early age; (6) his obsessive-compulsive behavior contributed to his inability to stop viewing child pornography images once he realized it was wrong; (7) after his father died of cancer, his depression and anxiety worsened, he was hospitalized for suicidal ideation, and he was unable to work; (8) he sought counseling, participated in psychological evaluations and treatment, and hoped to continue counseling in prison; (9) he has a strong support network of family and friends, reflected in letters submitted to the court; and (10) according to Dr. Robert Cohen's evaluation, Beasley was a low risk of recidivism with proper therapy and medication.

## D.    Addendum to the PSI

In response, the probation officer prepared an addendum to the PSI stating that the PSI's offense-level computation was correct.  To support the § 2G2.2(b)(3)(F) two-level "distribution" increase in paragraph 32 and lack of a § 2G2.2(b)(1) reduction, the probation officer added these facts: (1) Beasley "used peer to peer fil[e] sharing in the commission of the offense"; (2) his "files are made available to others using the file sharing program in exchange for access to their

7

files"; and (3) Beasley "used the peer to peer to receive child pornography and other users were able to access his files containing child pornography." Simply put, the probation officer contended that distribution was shown where a defendant installed a file sharing program that allowed others to access the defendant's files even if the defendant himself did not actually forward any files to others.

E.    Sentencing Court's Resolution of Beasley's Objections

At the sentencing hearing, Beasley had no objections to the facts contained in the PSI. When the district court asked for objections "as to the application of the guidelines," Beasley renewed his two objections to the PSI's offense-level calculation. Beasley's counsel acknowledged that "the 11th Circuit is against me" and explained that he was raising the objection in case the law changed as result of a 2012 Sentencing Commission Report.

The Report cited by Beasley stated that "every court of appeals that has addressed the issue has held that a defendant's knowing use of a P2P file-sharing program that allows others to have access to child pornography files on the defendant's computer qualifies as 'distribution' even if the defendant only made his illegal files available to strangers on the P2P network." U.S. Sentencing Commission, Report to Congress: Federal Child Pornography Offenses, Ch. 2B2, at 33 (December 2012). The Report added that "[p]ut another way, the distribution enhancement applies even if a defendant did not *intend* to distribute so long as he

8

possessed *knowledge* that, by participating in a P2P file-sharing program whereby he could access others' files, he was making his child pornography files accessible to others in the P2P network." Id. However, the Report stated that the current version of U.S.S.G. § 2G2.2 is outdated in light of technological advances and recommended revisions. See generally id., Ch. 12.

Beasley's counsel argued that Beasley should receive the two-level reduction because, other than the fact that he had the eMule software program on his computer, there was no evidence Beasley intended to distribute child pornography to other users. Beasley's counsel added, "There's no chat rooms. There was no active role in trading and soliciting from others via e-mail or chats."

The prosecutor responded that Beasley's use of "the peer-to-peer shared folder" in the eMule peer-to-peer file sharing program disqualified him for the § 2G2.2(b)(1) reduction because it showed he intended to distribute. The prosecutor stated that Beasley "knew and understood that using that peer-to-peer shared folder would allow others to go into his shared folder, as well as him soliciting or receiving or downloading that information from other people's shared folders . . . ." The prosecutor contended that the § 2G2.2(b)(3)(F) increase was appropriate "because the defendant used that peer-to-peer file sharing network," and "the 11th Circuit has been very clear with regard to this in that the two-level enhancement is used on the peer-to-peer shared file."

9

The district court commented that the parties "acknowledge[d] that the case law in the 11th Circuit has addressed that issue with regard to the distribution and the fact that the defendant used the peer-to-peer file sharing in the commission of the offenses with which he's been adjudicated guilty." The prosecutor summarized her argument, stating that it was Beasley's "use of this peer-to-peer shared drive" that was an "act of distribution" requiring the two-level increase. Defense counsel did not dispute the prosecutor's statements about Beasley's use of the peer-to-peer "shared folder."

The district court overruled Beasley's objections given it was undisputed that Beasley used the eMule peer-to-peer file sharing program "and that others were able to access his files containing the child pornography." The district court stated that it had resolved Beasley's objections to the "probation officer's application of the guidelines" and that there were "no objections to the facts contained in the presentence report." The district court adopted the PSI's facts as the court's findings of fact and found that Beasley's total offense level was 34, his criminal history was category I, which resulted in an advisory guidelines range of 151 to 188 months.

## F.    Imposition of the 115-Month Sentence

Beasley argued for a downward variance. Personally addressing the district court, Beasley accepted full responsibility for his actions and promised that he was

"never going to do what [he] did again." Through counsel, Beasley discussed his difficult family and social background and explained that his mental health disorders made him unable to control conduct he knew was wrong. Beasley explained that with the support of his family and friends and with his desire for treatment, he was unlikely to reoffend. Beasley emphasized that he had not accessed child pornography since the special agents' interview, even though he purchased a new laptop and viewed adult pornography with it.

The government requested a sentence within the guidelines range, noting that Beasley suffers from obsessive-compulsive disorder and a "chronic addiction to pornography." Although Beasley was "contrite," he nevertheless purchased a new laptop after moving to his mother's home in New York, following the special agents' interview and seizure of his Florida computers. A forensic examination revealed that the new laptop contained nine thumbnail images of child pornography in unallocated space, in addition to large amounts of adult pornography. A forensic examination of other computers found in Beasley's possession at his mother's residence revealed a significant number of older child pornography files. Although these older computers' registries showed that the files were last accessed in 2006, 2008, or 2010, Beasley still could have been charged with possessing them. The government asked the district court to consider these

11

newly discovered images as relevant conduct, but agreed that they did not change Beasley's guidelines calculations.

Beasley responded that: (1) there was no evidence that he viewed child pornography on the new laptop; (2) the presence of the thumbnail images in the unallocated space was consistent with someone visiting adult pornography websites or downloading large amounts of adult pornography; (3) those thumbnail images may be included in a cache of adult pornography that he downloaded; and (4) the forensic report did not reveal any search terms for child pornography or any files containing child pornography in the recent folder or the recycle bin.

The district court was concerned about Beasley's new laptop purchase because it seemed inconsistent with Dr. Cohen's opinion that Beasley was unlikely to reoffend and Beasley's allocution that he resolved to never look at child pornography again. The district court acknowledged, however, that there was no evidence Beasley had viewed child pornography on the new laptop and stated that Beasley's seemingly inconsistent conduct could be attributed to his "severe addiction problem" with pornography. Beasley explained that his new laptop purchase was not inconsistent with his low risk of recidivism because he used the new laptop only to play online games, chat with friends on social networking websites, and look at adult pornography, which, unlike child pornography, is not against the law.

12

The district court then proceeded to consider the § 3553(a) factors, including (1) Beasley's difficult upbringing; (2) his disabilities; (3) the bullying he experienced; (4) his father's voyeurism and influence on his sexual morality; and (5) Dr. Cohen's report diagnosing Beasley with Asperger's syndrome, major depressive disorder, anxiety disorder, and ADHD and indicating that Beasley is at a low risk of recidivism. The district court also considered the nature of Beasley's offense, stressing that this case was serious given the significant number of images. The district court ultimately granted a downward variance of 36 months and sentenced Beasley to two concurrent terms of 115 months' imprisonment, followed by ten years of supervised release.

The district court listed its reasons for the variance, including the nature and circumstances of the offense, Beasley's history and characteristics, including his: (1) mental health issues; (2) exposure to his father who was a negative influence; (3) difficult teenage years; (4) depression; (5) voluntarily committing himself three times for suicidal ideation; (6) "self-rehabilitation"; (7) low risk of recidivism documented in Dr. Cohen's report; and (8) lack of criminal history, particularly the lack of "history of inappropriate contact offenses, particularly contact offenses with minors."

The district court asked the parties whether there were any objections to the sentence imposed. Beasley's counsel stated, "Just for the record, Your Honor, as to procedural and substantive unreasonable[ness]."

## II.  DISCUSSION

### A.    Distribution Enhancement Under U.S.S.G. § 2G2.2(b)(3)(F)

Beasley argues that the district court erred in applying the two-level distribution increase and in denying a two-level reduction for lack of intent to distribute.[3] Section 2G2.2 applies to child pornography offenses. For a defendant, like Beasley, convicted of receiving child pornography, U.S.S.G. § 2G2.2(b)(1) provides a two-level reduction in the offense level if, among other things, "the defendant's conduct was limited to the receipt or solicitation of" child pornography, and "the defendant did not intend to traffic in, or distribute, such material." U.S.S.G. § 2G2.2(b)(1) (emphasis added).

If, however, the defendant's offense involved "[d]istribution" of child pornography, § 2G2.2(b)(3) calls for an offense-level increase depending on the nature of that distribution. Specifically, a five-level increase applies if the offense involved distribution that was for pecuniary gain or the receipt of a thing of value or was to a minor; a six-level increase applies if the distribution was to a minor and

---

[3]"We review the district court's findings of fact for clear error and its application of the Sentencing Guidelines de novo." United States v. Newman, 614 F.3d 1232, 1235 (11th Cir. 2010) (quotation marks omitted).

was intended to entice the minor to engage in any illegal activity; and a seven-level increase applies if the distribution was to a minor and was intended to entice the minor to engage in sexual conduct. U.S.S.G. § 2G2.2(b)(3)(A)-(E). If the offense involved distribution "other than" for pecuniary gain, for a thing of value, or to a minor, the district court imposes a two-level increase. Id. § 2G2.2(b)(3)(F).

An application note to § 2G2.2 defines "distribution" as "any act, including possession with intent to distribute, production, transmission, advertisement, and transportation, related to the transfer of material involving the sexual exploitation of a minor." Id. § 2G2.2, cmt. n.1. The note states that "distribution includes posting material involving the sexual exploitation of a minor on a website for public viewing but does not include the mere solicitation of such material by a defendant." Id.

This Court already has addressed when the use of a peer-to-peer file sharing program constitutes "distribution" under § 2G2.2(b), albeit in the context of the five-level increase for distribution for a non-pecuniary thing of value. In United States v. Spriggs, the defendant used a peer-to-peer file sharing program called "Shareaza 2.0." Spriggs, 666 F.3d 1284, 1286 (11th Cir. 2012). This Court concluded that to establish "distribution," the government need not prove that another peer-to-peer network user actually downloaded a child pornography file from the defendant's computer. Id. at 1287. Rather, "[a]llowing files to be

15

accessed on the Internet by placing them in a file sharing folder is akin to posting material on a website for public viewing. When the user knowingly makes the files accessible to others, the distribution is complete." Id.

Although the Spriggs Court determined that there was "distribution," it nonetheless concluded that the district court erred in applying the five-level increase because there was no evidence that there was a transaction (i.e., exchanging child pornography with another user) for "a thing of value." Id. at 1288-89 (explaining the guidelines contemplate a transaction conducted for valuable consideration, not free access, to receive the five-level increase under § 2G2.2(b)(3)(B)). Because the two-level increase in U.S.S.G. § 2G2.2(b)(3)(F), like the five-level increase in § 2G2.2(b)(3)(B), requires "distribution," Spriggs's interpretation of that term to include "knowingly mak[ing] the files accessible to others" through the use of a peer-to-peer file sharing program applies here. [4]

At Beasley's sentencing hearing, it was undisputed that: (1) he knowingly installed and used the peer-to-peer file sharing program eMule on his computer to download child pornography; and (2) he made his own child pornography files

---

[4]Three days after Spriggs, this Court decided United States v. Vadnais, in which another defendant challenged the district court's application of the five-level increase in § 2G2.2(b)(3)(B) based on his use of a peer-to-peer file sharing program called Limewire. Vadnais, 667 F.3d 1206, 1207 (11th Cir. 2012). In Vadnais, the defendant did not dispute that his use of Limewire was sufficient to establish "distribution" for purposes of the two-level increase in § 2G2.2(b)(3)(F). Id. at 1209. The Vadnais Court concluded that "while the facts on this record clearly support the two-level distribution enhancement, they cannot support the additional inference that the distribution was for the expectation of receiving a thing of value necessary for the five-level increase enhancement." Id. at 1210.

accessible to other eMule users.  Under Spriggs, these facts were sufficient to support the application of the two-level distribution enhancement.  At sentencing, Beasley argued that a more active role, such as using e-mail or chat rooms to trade images, was necessary to show distribution.  Beasley's argument, however, is foreclosed by Spriggs, which concluded that making child pornography files accessible to other peer-to-peer network users is enough to constitute distribution for purposes of § 2G2.2(b)(3).  Indeed, at sentencing, Beasley's counsel acknowledged that his argument was foreclosed by our precedent.

For the first time on appeal, Beasley argues that the government was required to offer evidence that he knowingly made his child pornography files accessible to other eMule users.  This argument lacks merit because at the sentencing hearing Beasley never made an objection that triggered the government's obligation to offer any evidence in support of the increase.  At the sentencing hearing, Beasley's objection to his offense level calculation was a legal one, not a factual one.  See United States v. Bennett, 472 F.3d 825, 833-34 (11th Cir. 2006) (concluding that the defendant waived his objection to the facts relating to his prior convictions contained in the PSI and PSI addendum because he did not object to them despite several opportunities to do so and instead at sentencing stated that his objection "rested not on a dispute regarding the facts of those convictions," but on a legal argument as to whether those convictions were

17

"serious enough to warrant the classification [as an armed career criminal]"); United States v. Beckles, 565 F.3d 832, 844 (11th Cir. 2009); United States v. Norris, 50 F.3d 959, 962 (11th Cir. 1995) (explaining that failure to object to the PSI's fact findings precludes appellate review of that issue).

The probation officer even prepared an addendum to the PSI clarifying that Beasley used the eMule peer-to-peer file sharing program to download child pornography and "other [eMule] users were able to access [Beasley's] files containing child pornography." Beasley never objected to this statement in the PSI's addendum, either in writing or orally at the sentencing hearing. In fact, at the beginning of the sentencing hearing, Beasley confirmed that he did not dispute the facts contained in the PSI, which at this point included the PSI addendum. Beasley further acknowledged that "the case law, and the 11th Circuit [was] against [him]" as to the two-level distribution enhancement and that he was making his legal argument "for the record should the law change."

And, Beasley continued to raise no factual objection, even when both the prosecutor and the district court stated on the record that it was undisputed that Beasley had made his files accessible to other eMule users. Indeed, before overruling Beasley's objections to the PSI, the district court stated that "there certainly is no objection with regard to the facts in this case that Mr. Beasley used a peer-to-peer file sharing" and "that others were able to access his files containing

18

the child pornography." Yet, even at this point, Beasley did not raise a factual objection. Beasley did not dispute at all, much less with "specificity and clarity," the fact that he knowingly allowed other eMule users to have access to his child pornography files.

On the particular record before us, we cannot say the district court erred in applying the § 2G2.2(b)(3)(F) increase and denying the § 2G2.2(b)(1) reduction.

**B.    Reasonableness**

We review the reasonableness of a sentence for an abuse of discretion using a two-step process. United States v. Pugh, 515 F.3d 1179, 1190 (11th Cir. 2008). We look first at whether the district court committed any significant procedural error, such as miscalculating the advisory guidelines range, treating the guidelines as mandatory, failing to consider the 18 U.S.C. § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to explain adequately the chosen sentence. Id.

Then, we examine whether the sentence is substantively unreasonable under the totality of the circumstances. Id. Although we do not automatically presume a sentence within the guidelines range is reasonable, we ordinarily expect such a sentence to be reasonable. United States v. Hunt, 526 F.3d 739, 746 (11th Cir. 2008). A sentence imposed well below the statutory maximum is another indicator of a reasonable sentence. See United States v. Gonzalez, 550 F.3d 1319, 1324

(11th Cir. 2008).  The defendant bears the burden to show his sentence is unreasonable in light of the record and the § 3553(a) factors.[5]  United States v. Thomas, 446 F.3d 1348, 1351 (11th Cir. 2006).

Beasley's procedural reasonableness claim rests on his challenge to the calculation of his offense level under § 2G2.2(b)(1) and (b)(3)(F).  As discussed above, that challenge is unavailing.  Accordingly, Beasley has not shown that his sentence is procedurally unreasonable.

As to substantive reasonableness, Beasley contends that the district court focused on his new laptop purchase "to the exclusion of the other sentencing factors," and punished Beasley for viewing adult pornography on the new laptop.[6]  The sentencing transcript belies this claim.

Although the district court initially discussed Beasley's new laptop purchase in light of the likelihood of recidivism, the record indicates that the court did not do so "single-mindedly," "to the detriment of" the other § 3553(a) factors, and with

---

[5]The § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwarranted sentencing disparities; and (10) the need to provide restitution to victims.  18 U.S.C. § 3553(a).

[6]Although Beasley's brief frames this issue as a procedural reasonableness challenge, it is in fact a substantive reasonableness challenge.  See United States v. Irey, 612 F.3d 1160, 1194 (11th Cir. 2010) (en banc) ("[S]ubstantive review exists, in substantial part, to correct sentences that are based on unreasonable weighing decisions.")

20

undue weight.  See United States v. Crisp, 454 F.3d 1285, 1292 (11th Cir. 2006) (concluding that the district court's single-minded focus on only one factor resulted in an unreasonable sentence).  Instead, as outlined above, the district court extensively considered a number of other § 3553(a) factors, many of them mitigating.

Moreover, Beasley has not shown that the district court's decision to impose a 115-month sentence was an abuse of its discretion in light of the record and the § 3553(a) factors.  Beasley's sentence was 36 months below the advisory guidelines range of 151 to 188 months and well below the twenty-year statutory maximum, both indications of a reasonable sentence.  See United States v. Hunt, 526 F.3d 739, 746 (11th Cir. 2008); United States v. Gonzalez, 550 F.3d 1319, 1324 (11th Cir. 2008).  As the district court noted, Beasley's offenses involved thousands of images of child pornography.  Beasley admitted collecting child pornography for about twenty years, and investigators found 6,405 images and 267 movies on the computer media at his Florida home, some depicting bestiality or bondage.  Under the totality of the circumstances, we cannot say the district court committed a clear error of judgment and imposed a sentence outside the range of reasonable sentences.

**AFFIRMED.**