VAN ANTWERPEN, Circuit Judge,
dissenting.
I cannot join my colleagues in the narrow definition of “distribution” they would apply to child pornography cases. George Husmann was convicted by a jury of three counts of distributing child pornography pursuant to 18 U.S.C. § 2252(a)(2). Hus-mann placed images of child pornography into a shared folder accessible to all global users of the peer-to-peer (“P2P”) file sharing program 360 Share Pro. Once in the *178 shared folder, a search term and a click of a mouse allowed access to these images by any user on the system. My colleagues definition of “distribution,” under 18 U.S.C. § 2252, would create a system in which a person who intentionally posted child pornography on the Internet, knowing it is accessible to hundreds, if not millions, of individuals, is not “distribution.” This is certainly not what Congress had in mind and following the majority’s approach, the crime of distribution would not be complete until a police officer downloaded the image.[1] This is a distinction without merit. Given the plain meaning of the term, the intent of Congress, the advancement of technology, as well as a series of recent sentencing cases, the placing of child pornography into a shared file accessible over a peer-to-peer file sharing network, alone should constitute “distribution.” Husmann took all the necessary steps to make a product available to the public in a publicly accessible location, and whether or not a party took that product is irrelevant to both the purpose of § 2252 and to his role as distributor. For that reason, the conviction of Appellant George Husmann for “distribution” under 18 U.S.C. § 2252 should be upheld.
As explained in my colleague’s discussion of how peer-to-peer networks[2] operate, when a file is placed into the “shared” folder, it is available to anyone who has the network on their own computers, and readily accessible by typing in relevant *179 search terms. United States v. Lewis, 554 F.3d 208, 211 (1st Cir.2009). “Also by default, any file a user downloads through [a peer-to-peer program] is automatically placed in that ‘Shared’ folder and is therefore offered by that user for further downloads by other users.” Id. Thus, a picture uploaded into a “shared” folder enters an expanding “international network of interconnected computers” and is available to “anyone else on the Internet” with this program.[3] Reno v. ACLU, 521 U.S. 844, 849, 117 S.Ct. 2829, 138 L.Ed.2d 874 (1997); see also Lewis, 554 F.3d at 211.
Key to the analysis of whether Husmann “distributed” the pornography by placing it into his “shared” folder is the type of peer-to-peer network which was used in this ease. It was 360 Share Pro.[4] 360 Share Pro “utilizes the LimeWire network to operate.” (App. vol. II at 186a.) Lime-Wire, often involved in the relevant case law discussed within, functions through an open and centralized “Gnutella network,” and “users can share all files stored on their computers with other LimeWire users.” Arista Records LLC v. Lime Grp. LLC, 784 F.Supp.2d 398, 410 (S.D.N.Y.2011) (internal quotation marks omitted) (“LimeWire recommends that all Lime-Wire users share generously with one another.”). Further,
LimeWire then scans the computers of other LimeWire users, to locate files that match the search criteria. The Li-meWire user can download any files that LimeWire locates. When the user downloads a file, LimeWire transfers a digital copy of the file from the computer on which it is located to the Lime-Wire user’s computer.
Id. at 410-11. Thus, once a file is placed in a shared folder it is “uploaded,” and available to the online community. (App. vol. II at 203a.)
We must not lose sight of the nature of Husmann’s crime.[5] Child pornography has the ability to perpetually harm the child posed or acted upon in the image or video. “Many victims live with persistent concern over who has seen images of their sexual abuse and suffer by knowing that their images are being used by offenders for sexual gratification....” 25 Fed. Sent. R. 334, 2013 WL 8171786, at *4. Once images of child pornography are distributed over the Internet, “it is impossible to eradicate all copies of [them].” Id. More troubling, the prevalence and pervasiveness of child pornography has increased dramatically in the Internet age. § 501, 120 Stat. 587. (“The advent of the Internet has greatly increased the ease of transporting, distributing, receiving, and advertising child pornography in interstate commerce.”). Moreover, in subsequent findings, Congress noted “[t]he technological ease, lack of expense, and anonymity in obtaining and distributing child pornography over the Internet has resulted in an explosion in the multijurisdictional distribution of child pornography.” Prosecution — Child Pornography Cases, Pub.L. 110-358, § 102, 122 Stat. 4001 (2008). The House of Representatives, in the report underlying the statute in question, 18 U.S.C. § 2252,[6] states:
*180 These disturbing images litter the Internet and pedophiles can purchase, view, or exchange this material with virtual anonymity ... and [the Internet’s] expansion ... has led to an explosion in the market for child pornography, making it easier to create, access, and distribute these images of abuse.
H.R.Rep. No. 112-638 (2012), reprinted in 2012 U.S.C.C.A.N. 662, 663 (emphasis added).
The ease, anonymity, and virtual unt-raceability with which Husmann made child pornography globally available is the engine behind § 2252, and the reason that “distribute” should be given a broader interpretation than the majority gives it. In analyzing the plain meaning of the statute, we need not define the outer boundaries of the term “distribution”; rather, we need only answer the specific question of whether placing an image of child pornography into a modern day “shared” folder as part of a peer-to-peer network is “distribution,” as the District Court found.[7]
If a statutory term is undefined, we must apply the basic principles of statutory interpretation when analyzing the definition of “distribution.” See Smith v. United States, 508 U.S. 223, 228, 113 S.Ct. 2050, 124 L.Ed.2d 138 (1993) (“When a word is not defined by statute, we normally construe it in accord with its ordinary or natural meaning.”). First, we must determine “whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case.” Marshak v. Treadwell, 240 F.3d 184, 192 (3d Cir.2001). Looking both to Black’s and Merriam-Webster’s dictionaries, we find the plain meaning of “distribute” to be: “1. To apportion; to divide among several. 2. To arrange by class or order. 3. To deliver. 4. To spread out; to disperse.” Black’s Law Dictionary 487 (9th ed.2009). Furthermore, in construing statutes, “we must, of course, start with the assumption that the legislative purpose is expressed by the ordinary meaning of the words used.” Richards v. United States, 369 U.S. 1, 9, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962). As the Supreme Court recognized, “reasonable statutory interpretation must account for both ‘the specific context in which ... language is used’ and ‘the broader context of the statute as a whole.’ ” Util. Air Regulatory Grp. v. EPA — U.S.—, 134 S.Ct. 2427, 189 L.Ed.2d 372 (2014) (quoting Robinson v. Shell Oil Co., 519 U.S. 337, 341, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997)) (emphasis added). Clearly the actions undertaken by Hus-mann, placing the images in a folder shared globally, dispersed and apportioned these images to third parties within the plain meaning of the statute.[8]
The purpose of Congress in § 2252 and prior related statutes was to counter the now readily available market for child pornography over the Internet. H.R. No. 112-638. As early as 1982, the Supreme Court recognized the harmful and reoccurring issues created by the distribution of child pornography. See New York v. Ferber, 458 U.S. 747, 759-60, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982). “[T]he distribution network for child pornography must *181 be closed if the production of material which requires the sexual exploitation of children is to be effectively controlled.” Id. at 759, 102 S.Ct. 3348. This trade includes the rampant use of peer-to-peer networks as “pedophiles use child pornography distribution methods other than traditional websites that are difficult to detect and disrupt, such as peer-to-peer technology.” Michael J. Henzey, Going on the Offensive: A Comprehensive Overview of Internet Child Pornography Distribution and Aggressive Legal Action, 11 Appalachian J.L. 1, 50 (2011) (citing Chad M.S. Steel, Child Pornography in Peer-to-Peer Networks, 33 Child Abuse & Neglect 560, 560 (2008)).
The purpose of § 2252 is, amongst others, to prevent the repeated abuse of children used to create the pornography by stopping the dissemination of images over the Internet. See § 501, 120 Stat. 587. Congress itself, when passing the Adam Walsh Child Protection and Safety Act of 2006, acknowledged the market for child pornography “through virtually every Internet technology, including ... peer-to-peer [networks.]” Id. Further, Congress found distribution to be paramount to the trade and further exposure of the exploited children, see id. (“Prohibiting the intrastate ... distribution ... of child pornography ... will cause some persons engaged in such intrastate activities to cease all such activities, thereby reducing both supply and demand in the interstate market for child pornography.”), and rested its findings on the premise that “[a] substantial interstate market in child pornography exists, including not only a multimillion dollar industry, but also a nationwide network of individuals openly advertising their desire to exploit children and to traffic [and] distribute child pornography with the expectation of receiving other child pornography in return.” Id. Contextually, one can draw an inference from the findings underlying this Act that the prevention of Internet distribution across peer-to-peer networks was contemplated as part of its purpose, and that purpose can be addressed by not limiting the definition of the term “distribution.”
Additionally, “distribution” has not been defined as requiring a subsequent download in similar contexts,[9] most notably the transferring of music over similar peer-to-peer networks in violation of copyright distribution rights. See Grokster, 545 U.S. at 919, 125 S.Ct. 2764 (holding that “one who distributes a device with the object of promoting its use to infringe copyright ... is liable”). “Electronic distribution on a peer-to-peer, without license from the copyright owners, violates the copyright owners’ exclusive right of distribution....” Capitol Records, Inc. v. Thomas-Rasset, 692 F.3d 899, 903 (8th Cir.2012).
Finally, the Sentencing Guidelines definition, which does not require a download,[10] has been incorporated by a number *182 of Circuits for similar crimes.[11] See United States v. Layton, 564 F.3d 330, 335 (4th Cir.2009) (collecting cases) (“We concur with the Seventh, Eighth, and Eleventh Circuits and hold that use of a peer-to-peer file-sharing program constitutes ‘distribution’ for the purposes of U.S.S.G. § 2G2.2(b)(3)(F).” (emphasis added).); see also Chiaradio, 684 F.3d at 282 (noting “[t]he fact that the defendant did not actively elect to transmit those files is irrelevant” to distribution). Several Circuits in this context have described the process of placing an image into a shared folder as “distribution.” See, e.g., United States v. Vadnais, 667 F.3d 1206, 1209 (11th Cir.2012) (noting control over what images are shared affects distribution); Arista Records, 784 F.Supp.2d at 411 n. 6 (describing the open and encouraged distribution process allowed through peer-to-peer networks). The Ninth Circuit, in a sentencing case, held “that ‘evidence of a deliberate, affirmative action of delivery’ is not required to sustain a conviction for distribution of child pornography under 18 U.S.C. § 2252(a)(2).” United States v. Vallejos, 742 F.3d 902, 907 (9th Cir.2014) (quoting United States v. Budziak, 697 F.3d 1105, 1108-09 (9th Cir.2012)); see also, e.g., United States v. McManus, 734 F.3d 315, 319 (4th Cir.2013) (“[Section] 2G2.2(b)(3)(F) is a residual enhancement” that may be applied “when a defendant knowingly permits others to access and retrieve child pornography files in the defendant’s possession, even if he does so passively.”); United States v. Reingold, 731 F.3d 204, 229-30 (2d Cir.2013) (“[K]nowingly placing child pornography files in a shared folder on a peer-to-peer file-sharing network constitutes distribution ... even if no one actually obtains an image from the folder” and “without regard to whether the defendant’s primary purpose in placing child pornography files in a file-sharing program was to receive or to distribute child pornography.”).
The majority misapplies the need for a download to create distribution, where other factual bases have greater merit in interpreting the definition. For example, in Shaffer, the Tenth Circuit, acknowledging that a law enforcement agent downloaded the images from a shared folder, noted that while the defendant “may not have actively pushed pornography on [peer-to-peer] users, ... he freely allowed them access to his computerized stash of images and videos and openly invited them to take, or download, those items.” 472 F.3d at 1223 (emphasis added). Other Circuits, in the sentencing context, have recently interpreted the statutory interpretation of “distribution” as, “when [a party] either transfers it to another person or makes it accessible to others through a file-sharing website or peer-to-peer network.” United States v. Grzybowicz, 747 F.3d 1296, 1308 (11th Cir.2014) (emphasis added); see also United States v. Collins, 642 F.3d 654, 655-57 (8th Cir.2011) (affirming a district court’s determination of “distribution” to only require placing the images in a *183 shared folder of a peer-to-peer network and knowledge of how that system works).[12] This is consistent with the technology, where users control what is in their shared folders, and, once removed, those images are not accessible to the Internet. See Vadnais, 667 F.3d at 1208-09.
Determining that placing an image of child pornography into a shared folder constitutes “distribution” would, in light of the technological advances, encompass the plain meaning and the purpose of § 2252. See United States v. C.R., 792 F.Supp.2d 343, 367 (E.D.N.Y.2011), overruled on other grounds by United States v. Reingold, 731 F.3d 204 (2d Cir.2013) (noting “technical advances have led to [child pornography’s] proliferation over the past twenty years”); see also 25 Fed. Sent. R. 334, 2013 WL 8171786, at *6 (discussing “dramatic technological changes related to computers and the Internet over the past decade ... which have changed the way typical offenders today ... distribute child pornography”).
In the alternative, even if the majority’s definition of “distribution” is accepted, I would hold that the District Court did not plainly err in denying Husmann’s Rule 29 motion to enter a judgment of acquittal, because the evidence was sufficient for the jury to find Husmann distributed child pornography beyond a reasonable doubt. The majority finds the District Court committed plain error by denying Husmann’s motion for acquittal on the basis that the government “did not present evidence that Husmann’s attempts to distribute child pornography ever succeeded.” Maj. Op. at 177. As the majority notes, because the issue of sufficiency of the evidence as to “distribution” was raised for the first time on appeal, we undertake plain error review. Id. at 173 n. 2. Plain error review requires the Appellant to demonstrate: “(1) there was an error; (2) the error is clear or obvious; and (3) the error affected the appellant’s substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings.” Id. (quoting United States v. Andrews, 681 F.3d 509, 517 (3d Cir.2012)). Thus, it would need to be clear or obvious that the District Court erred in concluding that a reasonable jury could have found that Husmann distributed child pornography.[13]
Despite Husmann’s present claims to the contrary, the testimony elicited could have allowed a rational jury to find Hus-mann guilty for distributing child pornography. Jurors can make reasonable inferences which naturally rise from the evidence. See Ansell v. Green Acres Contracting Co., 347 F.3d 515, 525 (3d Cir.2003). First, the jury could have reasonably found Husmann uploaded the pornography into a shared folder.[14] Sec *184 ond, the jury could have found beyond a reasonable doubt that at least one of the many users with the file sharing program downloaded the images Husmann made globally available. This testimony included descriptions of the global accessibility of peer-to-peer networks and the contents of the shared folders:
[AGENT PRICE:] [LimeWire and 360 Share Pro] are programs that are termed as peer-to-peer sharing programs where there is no centralized computer where the information is stored.
Basically, anybody on the internet who has access to the software can share files and folders amongst all of the different users in the world. It is a peer-to-peer system, there is not centralized storage system of the files.
(App. vol. II at 185a-186a (emphasis added).) He further testified about the purpose of uploading an image:
[AGENT PRICE:] [Images are] being shared by the 360 Share Pro for the online community to download.
(Id. at 202a.) Finally, Agent Price testified that the specific images were available for download through the peer-to-peer network:
[ATTORNEY:] Can you tell [if] this image was ever actually successfully uploaded?
[AGENT PRICE:] Yes.
[ATTORNEY:] And do you have a professional opinion as to whether this was successfully uploaded onto the internet?
[AGENT PRICE:] Yes.
[I]t was shared for all people to view and download.
(Id. at 218a-219a (emphasis added).)
Proof beyond a reasonable doubt is met by the “prosecution persuading] the fact-finder ‘beyond a reasonable doubt’ of the facts necessary to establish all elements of the offense.” United States v. Vazquez, 271 F.3d 93, 125 (3d Cir.2001) (citing Sullivan v. Louisiana, 508 U.S. 275, 277-78, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993)). Furthermore, the government, as verdict winner, is entitled to “the benefit of all reasonable inferences capable of being drawn therefrom, and an ... interpretation of] the evidence in the light most favorable to [it].” Hahn v. Atl. Richfield Co., 625 F.2d 1095, 1099 (3d Cir.1980) (citing Cont’l Ore Co. v. Union Carbide & Carbon Corp., 370 U.S. 690, 696, 82 S.Ct. 1404, 8 L.Ed.2d 777 (1962)). Review of the record suggests enough evidence was presented to allow the jury to find Hus-mann guilty of a distribution crime that included the majority’s requirement of a download. The District Court did not “clear[ly] or obvious[ly]” err in denying Husmann’s motion for acquittal. In sum, *185 the evidence presented could have allowed a rational jury to conclude, beyond a reasonable doubt, that Husmann uploaded the images into his shared folder, made images of child pornography available to a global audience, and that at least one member of Husmann’s global network downloaded them, thus “distributing” child pornography as charged by the District Court.
At bottom, I find the majority’s definition of “distribution” to be overly narrow in regards to the plain meaning and purpose of 18 U.S.C. § 2252, or, in the alternative, find the District Court did not commit plain error because a rational jury could have found that a third party downloaded the accessible pornography. Thus, for the aforementioned reasons, I respectfully dissent.

. This is not a strict requirement of the majority's definition, however due to the inability to search third party computers, law enforcement officers downloading the image prior to arrest is most common in cases under § 2252. See e.g., United States v. Richardson, 713 F.3d 232 (5th Cir.2013). a

. Speaking to its original purpose, the Supreme Court found "peer-to-peer networks [were originally] employed to store and distribute electronic files by universities, government agencies, corporations, and libraries, among others." MGM Studios, Inc. v. Grokster, Ltd., 545 U.S. 913, 920, 125 S.Ct. 2764, 162 L.Ed.2d 781 (2005). Peer-to-peer programs allow users through their computers to communicate "directly with each other, not through central servers." United States v. Caparotta, 890 F.Supp.2d 200, 202 (E.D.N.Y.2012) (quoting Grokster, 545 U.S. at 919-20, 125 S.Ct. 2764). These file sharing components "combine[] two functions: the ability to search for and download the files from other users, and the ability to make files on one's own computer available to other users." Lewis, 554 F.3d at 211 (emphasis added). “A P2P program user can make his files accessible for browsing and downloading by other users by placing such files into a designated folder (the ‘shared folder’) that will automatically share its contents with the network.” Caparotta, 890 F.Supp.2d at 202 (citing United States v. Chiaradio, 684 F.3d 265, 271 (1st Cir.2012) (emphasis added)). "The most common mode of distribution today is ‘open’ P2P file-sharing.” Report to Congress: Federal Child Pornography Offense: Executive Summary, 25 Fed. Sent. R. 334, 2013 WL 8171786, at *14 (June 1, 2013). "Open" sharing allows distribution "impersonalfly] and indiscriminate[ly]“ to anyone with the program. Id. Other types, “reflecting a significant evolution of technologies used to distribute child pornography ... in the last decade” include "closed” programs, as well as "pure,” "centralized” and "hybrid” networks, differing in how and where a file is stored and accessed. Id.; see also Columbia Pictures Indus., Inc. v. Fung, 710 F.3d 1020, 1025-26 (9th Cir.2013). These programs have "changed the way typical offenders today receive and distribute child pornography.” 25 Fed. Sent. R. 334, 2013 WL 8171786, at *5. Most worrying, a child pom distributor does not "need[] any particular technological expertise" and because P2P networks cut out a centralized server (or "middle man”), there are no records." Michael J. Henzey, Going on the Offensive: A Comprehensive Overview of Internet Child Pornography Distribution and Aggressive Legal Action, 11 Appalachian J.L. 1, 50 (2011). As a result, peer-to-peer networks are "stimulating the supply in the interstate market [of] child pornography.” Adam Walsh Child Protection and Safety Act of 2006, Pub.L. 109-248, § 501, 120 Stat. 587 (2006).

. Peer-to-peer sharing programs are free to the public via download. (App. vol. II at 199a.)

. 360 Share Pro is a subsidiary user of the greater LimeWire network. (Id. at 186a.)

. If the majority prevails, I implore Congress to immediately update 18 U.S.C. § 2252 to prevent the uploading of images to a peer-to-peer network by defining such action as "distribution.”

. Cited as the “Child Protection Act of 2012.”

. The parties fail to raise the "rule of lenity,” see, e.g., United States v. Cheeseman, 600 F.3d 270, 276 (3d Cir.2010), in their briefs on appeal and thus the issue is deemed waived.

. Lower courts applying this plain meaning approach have held the definition of "distribution” is not limited to situations in which someone downloads an image. See Caparotta, 890 F.Supp.2d at 204. ("Considering the plain meaning of ‘distribute,’ the court finds that defendant's placing of child pornography files in a shared folder accessible to others via a P2P program on the internet constitutes ‘distribution’ under Section 2252(a)(2) to persons to share and download.”).

. In drug distribution cases, "distribution” has been broadly interpreted to include any "acts perpetrated in furtherance of a transfer or sale, such as arranging or supervising the delivery, or negotiating for or receiving the purchase price.” United States v. Jackson, 213 F.3d 1269, 1296 (10th Cir.2000), vacated and remanded on other grounds, 531 U.S. 1038, 121 S.Ct. 629, 148 L.Ed.2d 537 (2000) (internal quotation marks omitted); see also 18 U.S.C. § 841(n) ("Distribute, defined, means to sell, issue, give, transfer, or otherwise dispose of.”).

. It is noteworthy that the United States Sentencing Guidelines § 2G2.2, when directly addressing crimes committed under § 2252, has defined "distribute” in the broader act as
including possession with intent to distribute, production, transmission, advertisement, and transportation, related to the transfer of material involving the sexual *182 exploitation of a minor. Accordingly, distribution includes posting material involving the sexual exploitation of a minor on a website for public viewing but does not include the mere solicitation of such material by a defendant.
U.S.S.G. § 2G2.2(b)(3)(F) cmt. n. 1 (emphasis added).

. Our Circuit has followed this defining course, albeit for "aiding and abetting the transportation of child pornography” in an unpublished opinion. See United States v. Schade, 318 Fed.Appx. 91, 94 (3d Cir.2009) ("[W]e cannot conclude that the jury was unreasonable in determining from this evidence that Schade intentionally kept child pornography files in the 'My Downloads' folder and knew that doing so would allow BearS-hare users to access and upload them.”).

. Husmann undertook the same action with a requisite knowledge of file sharing.

. It must also be noted that no objection was made when at trial, the District Judge charged the jury with the following definition of "distribution'':
[T]he definition of distribution is if you find the defendant knowingly placed images into the sharing folder of a file sharing program, and if you find that the defendant knew that placing the files in that folder allowed others to gain access to his folder and download those images you may find the defendant guilty of distribution.
(App. vol. II at 389a.)

.Ample evidence was provided by the Government proving Husmann uploaded the images. F.B.I. Forensic Agent Price then testified the images uploaded by Husmann onto this system were "shared.”
[ATTORNEY:] So looking at this document here, can you tell if this [file] was actually distributed and then uploaded?
[AGENT PRICE:] Yes, it is being shared by the 360 Share Pro for the online community to download.
*184 [ATTORNEY:] Do you have an expert opinion whether that was successfully uploaded?
[AGENT PRICE:] I do.
(App. vol. II at 202a.) The testimony concluded with confirmation the child pornography uploaded onto the file sharing network was being "shared.'1 The thumb drive contained images found in a folder titled "Art-pics5." (Id. at 264a.) These same pictures were found shared in 360 Share Pro in a folder called "Adorablecuties.” (Id. at 261a, 264a.) Agent Price testified these images were uploaded onto 360 Share Pro from a thumb drive.
[ATTORNEY:] [Y]ou can tell that this file is uploaded on 360 Share Pro?
[AGENT PRICE:] Yes, it is being shared to the online community.
[ATTORNEY:] On [Husmann’s] computer? [AGENT PRICE:] Yes
[ATTORNEY:] And in your expert opinion it was actually successful?
[AGENT PRICE:] Yes.
(Id. at 203a.)