[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 1, 2011
JOHN LEY
CLERK

_____

No. 10-13364
Non-Argument Calendar

_____

D.C. Docket No. 9:10-cr-80012-KAM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

WILLIAM A. COTE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(November 1, 2011)

Before EDMONDSON, HULL and KRAVITCH, Circuit Judges.

PER CURIAM:

After pleading guilty, William A. Cote appeals his 168-month sentence for

one count of transporting child pornography, in violation of 18 U.S.C.

§ 2252(a)(1). On appeal, Cote challenges the district court's calculation of his offense level under the Sentencing Guidelines. After review, we affirm.

## I. BACKGROUND FACTS

Detective Charles Ramos, a police officer in Palm Beach County, Florida, was posing as a pedophile on the Internet and using a file sharing program called Gigatribe. Defendant Cote sent Detective Ramos an online invitation to join Cote's private peer-to-peer network. After Detective Ramos accepted, Cote indicated he had files to share and made available six file folders that Ramos was able to browse and download. Detective Ramos successfully downloaded several files that contained images of child pornography from Cote's folders.

Detective Ramos captured Cote's IP address and traced it to Cote's home in Maine. Shortly thereafter, local law enforcement in Maine interviewed Cote at his residence. Cote admitted using the Gigatribe program and having child pornography on his computer. Cote explained that he received the images from another person. Cote also admitted communicating on the Internet with Detective Ramos and sending him images. An examination of Cote's computer later revealed 274 videos and 2,716 images of child pornography.

Around the same time that Cote was communicating with Detective Ramos, Cote also communicated via the Internet with undercover officers in California

and Canada. These officers, also using Gigatribe, browsed Cote's shared files and were able to download a total of nearly 700 images of child pornography.

At sentencing, over Cote's objection, the district court imposed: (1) a five-level increase in Cote's offense level, pursuant to U.S.S.G. § 2G2.2(b)(7)(D), based on his relevant conduct of possessing over 600 images of child pornography, and (2) another five-level increase, pursuant to U.S.S.G. § 2G2.2(b)(3)(B), because Cote distributed images of child pornography in exchange for receipt of, or the expectation of receipt of, a "thing of value." After adding eight levels under other guidelines provisions not relevant to this appeal, the district court calculated a total offense level of 37. With a criminal history category of I, Cote's advisory guidelines range was 210 to 262 months' imprisonment, but was limited by the statutory maximum sentence of twenty years (240 months). The district court granted Cote's request for a downward variance and imposed a 168-month sentence. Cote filed this appeal.

## II. DISCUSSION

### A. Enhancement Based on Number of Images

On appeal, Cote argues that the district court should not have applied U.S.S.G. § 2G2.2(b)(7)(D)'s five-level enhancement because only ten images of

child pornography were transported to and downloaded by Detective Ramos.[1]

Under U.S.S.G. § 2G2.2(b)(7)(D), a five-level enhancement is warranted "[i]f the offense involved . . . 600 or more images." U.S.S.G. § 2G2.2(b)(7)(D). An "offense" includes "the offense of conviction and all relevant conduct under § 1B1.3 (Relevant Conduct) unless a different meaning is specified or is otherwise clear from the context." U.S.S.G. § 1B1.1 cmt. n.1(H).

Relevant conduct under U.S.S.G. § 1B1.3 is not limited to the conduct charged in the indictment. United States v. Ignancio Munio, 909 F.2d 436, 438 (11th Cir. 1990). Relevant conduct includes all acts committed by the defendant during the commission of the offense of conviction, in preparation for the offense or in the course of attempting to avoid detection or responsibility for the offense. U.S.S.G. § 1B1.3(a)(1). Additionally, for "offenses of a character for which § 3D1.2(d) would require grouping," that is, offenses involving substantially the same harm, relevant conduct includes the defendant's acts "that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2).[2] This latter relevant conduct provision covers offenses

_____

[1] We review the district court's interpretation of the sentencing guidelines de novo and its factual findings for clear error. United States v. Zaldivar, 615 F.3d 1346, 1350 (11th Cir. 2010), cert. denied, 131 S. Ct. 959 (2011).

[2] We reject Cote's argument that § 1B1.3(a)(2) does not apply because his other acts of possession and transportation were not charged as counts in his indictment and thus could not be

4

"for which the guidelines depend substantially on quantity" and that "often involve a pattern of misconduct that cannot readily be broken into discrete, identifiable units that are meaningful for purposes of sentencing." U.S.S.G. § 1B1.3, cmt. background. In determining whether offenses are part of the same course of conduct, the sentencing court should consider certain factors, including "the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses." United States v. Blanc, 146 F.3d 847, 852 (11th Cir. 1998) (quotation marks omitted).

Here, Cote's possession of over 2,700 images of child pornography on his computer and his sharing of almost 700 of these images with undercover officers in Canada and California using the same peer-to-peer file sharing program are relevant conduct within the meaning of § 3B1.3. These acts are similar in degree to the charged offense and are substantially connected to the charged offense given that one must first possess child pornography before one can transport it. Additionally, these acts occurred around the same time as the charged offense. And, the record establishes that, using the Gigatribe file-sharing program, Cote

---

grouped. Section 1B1.3(a)(2) applies to uncharged relevant conduct that, if it had been charged, would have been grouped with the charged offense under § 3D1.2(d). See U.S.S.G. § 1B1.3, cmt. background (explaining that "the applicability of subsection (a)(2) does not depend upon whether multiple counts are alleged).

regularly sought out and possessed child pornography on the Internet and made his collection of child pornography available to others.

Under these facts, the district court did not err in finding that Cote's possession and sharing of over 600 images of child pornography was part of the same course of conduct as the charged offense, and that Cote should be held accountable for it as relevant conduct. Thus, the district court did not err in imposing U.S.S.G. § 2G2.2(b)(7)(D)'s five-level enhancement.

**B.      Enhancement Based on Expected Exchange of Child Pornography**

Cote contends § 2G2.2(b)(3)(B)'s five-level enhancement was inapplicable because the record did not show that he expected or sought anything in exchange for sharing his images of child pornography.

Under U.S.S.G. § 2G2.2(b)(3)(B), a defendant's offense level is increased by five levels if his offense involved "[d]istribution for the receipt, or expectation of receipt, of a thing of value, but not for pecuniary gain." U.S.S.G. § 2G2.2(b)(3)(B) (emphasis added). Distribution is "any act . . . related to the transfer" of the material and "includes posting material . . . on a website for public viewing . . . ." U.S.S.G. § 2G2.2, cmt. n.1. Distribution "for the receipt, or expectation of receipt, of a thing of value" includes "bartering or other in-kind transaction," such as the exchange of child pornography. Id. (quotation marks

omitted).  Thus, "when a defendant trades child pornography in exchange for other child pornography, the defendant has engaged in distribution for the receipt, or expectation of receipt, of a thing of value."  United States v. Bender, 290 F.3d 1279, 1286-87 (11th Cir. 2002) (affirming application of the five-level enhancement where defendant "sent child pornography so that he would receive other child pornography in exchange") (quotation marks omitted).

Here, the district court did not err by increasing Cote's offense level by five levels under § 2G2.2(b)(3)(B).  Cote posted material involving the sexual exploitation of a minor on the Internet and made it available for others to view.  Cote knew how to use Gigatribe to search for and download child pornography, actually downloaded such material, stored his child pornography in a shared-file area available for Internet download, and invited others to download his files.  One incentive to make child pornography images available over the Internet via peer-to-peer file-sharing software is to obtain other images of child pornography in return.  Thus, even without an explicit quid pro quo agreement with another distributor of child pornography, a person may engage in such conduct with the reasonable expectation of an exchange.  See, e.g., United States v. Geiner, 498 F.3d 1104, 1109-11 (10th Cir. 2007) (concluding that § 2G2.2(b)(2)(B)'s enhancement applied to defendant who used file-sharing software to download

7

child pornography and to share his child pornography with others even though he never communicated with those who downloaded his pornography and had no definite guarantee that they would share their pornography with him); United States v. Griffin, 482 F.3d 1008, 1013 (8th Cir. 2007) (concluding § 2G2.2(b)(2)(B)'s enhancement applied where defendant admitted using file-sharing network to download child pornography and understood that the program existed "for users to share, swap, barter, or trade files between one another"); United States v. Maneri, 353 F.3d 165, 169 (2d. Cir. 2003) (stating that § 2G2.2(b)(2)(B)'s enhancement "applies when a defendant distributes child pornography in anticipation of, or while reasonably believing in the possibility of," an exchange of pornographic material even if there is no explicit agreement to make an exchange).

Moreover, the record belies Cote's claim that he did not expect to receive anything from the undercover officers in return for sharing his own files. Cote expressly asked an undercover officer in California whether he had files to share, saying "[I] just made mine viewable to you." This supports the finding that Cote provided access to his files with the expectation that other child pornography files

would be made available to him in exchange.[3]

**AFFIRMED**.

---

[3]Cote's appeal brief refers several times to a transcript mistake and suggests that it warrants reversal. Specifically, at sentencing, the government inadvertently submitted the transcript of an Internet chat between Cote and the Canadian undercover officer, rather than an Internet chat between Cote and Detective Ramos. Even assuming arguendo Cote adequately raised this issue on appeal, because he did not raise it at sentencing, our review would be for plain error. See United States v. Rodriguez, 398 F.3d 1291, 1298 (11th Cir. 2005). Cote cannot show plain error, which requires an error that is plain and that affects his substantial rights. See id. The substance of the chat submitted was nearly identical to Cote's other exchanges, all of which were in the record, undisputed (with one exception–whether Cote was "lying" when he said he drugged and touched minors) and considered by the district court. The similarity of the content among the different chats leads us to conclude that the admission of the chat with the Canadian officer instead of the chat with Detective Ramos did not affect the outcome of Cote's sentencing. See id. at 1299 (explaining that for an error to have affected substantial rights there must be a reasonable probability that it affected the outcome of the district court proceedings).