[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-11808
Non-Argument Calendar

_____

D.C. Docket No. 9:11-cr-80091-WJZ-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

JASON P. BAILEY,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____
(October 22, 2012)

Before BARKETT, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

Jason Bailey appeals his 210-month sentence, imposed at the low end of the

applicable guideline range, after he pled guilty to one count of distribution of child

pornography in violation of 18 U.S.C. § 2252(a)(2).  On appeal, Bailey argues that the district court plainly erred when it applied a five-level enhancement to his sentence, pursuant to U.S.S.G. §2G2.2(b)(3)(B), for distributing child pornography in receipt, or expectation of receipt, of a thing of value.  Finding no plain error on the part of the district court, we affirm.

We normally review district court findings of fact for clear error and review the application of the Sentencing Guidelines *de novo*.  *United States v. Newman*, 614 F.3d 1232, 1235 (11th Cir. 2010).  However, when a defendant fails to raise a particular argument in the district court below, we review the decision only for plain error.  *See United States v. Moreno*, 421 F.3d 1217, 1220 (11th Cir. 2005) (per curiam).  To establish plain error, the defendant must show: (1) error; (2) that is plain; (3) that affects substantial rights; and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings.  *Id.*

Section 2G2.2(b)(3)(B) of the Sentencing Guidelines authorizes a five-level enhancement where the defendant engages in the distribution of child pornography "for the receipt, or expectation of receipt, of a thing of value, but not for pecuniary gain."  U.S.S.G. 2G2.2(b)(3)(B).  This provision applies to "any transaction, including bartering or other in-kind transaction, that is conducted for a thing of value, but not for profit."  U.S.S.G. § 2G2.2(b)(3)(B), cmt. n.1.  A "thing of value"

2

is defined as "anything of valuable consideration," and both the Sentencing Guidelines and our case law have explicitly included the receipt of child pornographic material in exchange for other child pornographic material as an exchange for a "thing of value." *Id.*; *see also United States v. Bender*, 290 F.3d 1279, 1286 (11th Cir. 2002) (holding that "when a defendant trades child pornography for more child pornography, [he] has engaged in 'distribution for the receipt, or expectation of receipt, of a thing of value'").

Bailey contends that the district court plainly erred in applying the § 2G2.2(b)(3)(B) five-level enhancement, which he claims the district court based solely on his use of the Gigatribe peer-to-peer file-sharing network. Bailey claims that the record only shows that he intended to distribute child pornography, warranting a two-level sentencing enhancement under § 2G2.2(b)(3)(F), but he maintains that the record does not show what he expected or whether he expected anything at all in exchange for sharing the pornographic material in his possession.[1]

Bailey relies heavily on our decision in *United States v. Vadnais*, 667 F.3d

---

[1]Bailey also claims that there is no evidence that he solicited or downloaded the files that the undercover agent, Detective Ramos, sent him. However, this is irrelevant to our analysis, as a defendant need not actually receive child pornography; instead, merely *expecting* its receipt is sufficient under the auspices of § 2G2.2(b)(3)(B).

1206 (11th Cir. 2012), where we held that a defendant's mere use of a peer-to-peer file-sharing network to download child pornography does not, by itself, support the application of the § 2G2.2(b)(3)(B) five-level enhancement.  667 F.3d at 1209. Instead, the government must present "some other evidence, whether direct or circumstantial, that a defendant reasonably believed that he would receive something of value by making his child pornography files available for distribution through a peer-to-peer network." *Id.*

However, this Court has also recognized that "[o]ne incentive to make child pornography images available over the Internet via peer-to-peer file-sharing software is to obtain other images of child pornography in return," and that "even without an explicit quid pro quo agreement with another distributer of child pornography, a person may engage in such conduct with the reasonable expectation of an exchange." *United States v. Cote*, 11th Cir. 2011, __ F. App'x __ (No. 10-13364, Nov. 1, 2011) (per curiam) (holding that the five-level enhancement applied to a defendant who used the Gigatribe peer-to-peer file-sharing program to download, post, and share child pornography; who knew how to use the program to search for and download child pornography; who stored his child pornography in a shared file available for download by other users; who invited others to download his files; and who expressly asked the undercover

4

officer whether the officer had files to share).

Based on the evidence presented below, the district court did not plainly err in applying the five-level sentence enhancement.  The online communication between Bailey and the undercover agent, Detective Ramos, as well as Bailey's protective file distribution habits, sufficiently link Bailey's distribution of child pornography with the expectation of receiving child pornography in return.  After Bailey initiated a private conversation with Detective Ramos, the detective asked Bailey, "what do you like," as well as whether Bailey preferred images of boys or girls.  It was only after Detective Ramos asked these questions, creating an expectation that Detective Ramos would send Bailey child pornography to match Bailey's pornographic interests, that Bailey shared his password-protected child pornography files and their respective passwords.

Further, other portions of the record provide additional evidence to establish Bailey's expectation of an exchange of pornographic material: (1) defense counsel's statement during the sentencing hearing that Bailey received the child pornography files by "swapping images with people on the internet"; (2) defense counsel's statement during the sentencing hearing that when sending child pornography, Gigatribe users "send you what they have, you send what you have"; and (3) the inclusion of a psychologist's report in Bailey's sentencing

5

memorandum, highlighting Bailey's admission that he "exchanged images of child pornography with select individuals on a file sharing service (Gigatribe)." Ultimately, Bailey's conversation with Detective Ramos, in conjunction with the other statements by defense counsel and by Bailey himself, constitute the direct and circumstantial evidence necessary to show that Bailey "reasonably believed that he would receive something of value by making his child pornography files available for distribution." *Vadnais*, 667 F.3d at 1209.

Moreover, the issue before us in *Vadnais* was a rather narrow one: "whether Vadnais's use of peer-to-peer file-sharing software to obtain child pornography files from other users in a manner that permitted other users to obtain child pornography files from his shared folder supports the application of the five-level enhancement of § 2G2.2(b)(3)(B)." 667 F.3d at 1208. Thus, we specifically examined the district court's holding and the government's contention that Vadnais's failure to turn off the default file-sharing setting, which *automatically* placed the downloaded child pornography files in a shared folder on his computer and *automatically* made them available to other network users, was sufficient to warrant the application of the five-level sentencing enhancement. While we rejected this argument and ultimately reversed the district court's ruling, the case before us is distinguishable from the more passive, default-setting distribution at

6

issue in *Vadnais*.[2]

While the record suggests that there were indeed some files that Bailey

made available without password protection, as was the case in *Vadnais*, the

record before us does not end there: as mentioned above, Bailey explicitly

discussed his pornographic preferences with Detective Ramos *before* sharing the

---

[2]Bailey attempts to analogize Gigatribe, the peer-to-peer file sharing program at issue here, to LimeWire, the peer-to-peer file sharing program at issue in *Vadnais*. Baily claims that it is immaterial that Gigatribe requires users to receive specific authorization to access another user's files. In *Vadnais*, we described the function of LimeWire as follows:

> LimeWire is a file-sharing program that utilizes "peer-to-peer" ("P2P") technology. By employing P2P technology, LimeWire permits its users to share digital files via an Internet-based network known as the "Gnutella network." LimeWire users can share almost all files stored on their computers with other LimeWire users. When a LimeWire user wishes to locate digital files available through the network, she enters search criteria into the search function on LimeWire's user interface. LimeWire then scans the computers of other LimeWire users, to locate files that match the search criteria. The LimeWire user can download any files that LimeWire locates. When the user downloads a file, LimeWire transfers a digital copy of the file from the computer on which it is located to the LimeWire user's computer.

667 F.3d at 1208 (quoting *Arista Records LLC v. Lime Group LLC*, 784 F. Supp. 2d 398, 410–11 (S.D.N.Y. 2011) (footnote omitted)). We also specifically found that the five-level sentencing enhancement was "not supported by the ordinary operation of the LimeWire file-sharing software," *id.* at 1209, which allowed default "freeloading," or "obtaining files from others without any requirement of providing files in return." *Id.* at 1210. Gigatribe's network operation, on the other hand:

> [E]nables a user to create his own private network, which he controls. He can invite guests to join his network, and remove guests from his network at any time. He can also prevent other users from viewing his personal information without his permission. A user can also join the networks of other Gigatribe users, but only with the permission of the user who created the network. Users select specific folders on their computers they wish to share with other users in the network.

*United States v. Ladeau*, D. Mass. 2010, __ F. Supp. __, (No. 09-40021, Apr. 7, 2010); *see Cote*, __ F. App'x at __ ("Defendant Cote sent Detective Ramos an online invitation to join Cote's private peer-to-peer network."). Thus, the operational differences between LimeWire and Gigatribe are very much relevant here.

7

password-protected child pornography files.  Although the files that Bailey made available without password protection might only warrant a two-level enhancement under § 2G2.2(b)(3)(F), as Bailey claims, the circumstances surrounding the password-protected files that he shared with Detective Ramos are sufficient to support the five-level enhancement.  Thus, the aforementioned evidence indicates that it was not plain error for the district court to find that Bailey exchanged his files for a thing of value.  Accordingly, we affirm.

**AFFIRMED.**

8