**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 14a0783n.06

Case No. 13-4219

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Oct 15, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| RICHARD J. MIEZIN, | ) | OHIO |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | OPINION |

BEFORE: DAUGHTREY, ROGERS, and DONALD, Circuit Judges.

**BERNICE BOUIE DONALD, Circuit Judge.** Following a guilty plea on a child-pornography charge, the district court sentenced Richard J. Miezin to 168 months' imprisonment. Miezin appeals his sentence on two grounds: (1) that the Government breached the plea agreement in its sentencing memorandum and at the sentencing hearing by arguing for a sentencing enhancement that was contrary to the terms of the agreement; and (2) that the district court erred in applying the enhancement. For the reasons discussed below, we **AFFIRM** Miezin's 168-month sentence.

## I. BACKGROUND

### A.     Factual Background

Using the internet, Miezin repeatedly downloaded a peer-to-peer file-sharing program, known as "Gigatribe," to communicate with other individuals involved with child pornography and to exchange computer files containing the same. Gigatribe allows its users to create their own private network of contacts, and file sharing is limited to those users who are included in the user's private network. Users can add other users to their network via private invitations that, if accepted, allow both the inviter and the invitee to access one another's shared files. Gigatribe users can also use the program to chat with other users and to share image files. Through chat conversations or by viewing and selecting from other users' shared folders, Miezin used Gigatribe to receive and distribute visual depictions of prepubescent males engaged in oral-to-genital contact, anal intercourse, digital penetration, and the lascivious exhibition of their genitals. Miezin would then delete Gigatribe and the images from his computer until the next time he wanted to access child pornography.

On eleven separate occasions from April 27, 2010, through February 25, 2011, undercover federal law-enforcement officers downloaded image and video files depicting real minors engaged in sexually explicit conduct from Miezin's computer. On April 7, 2011, officers executed a search warrant at Miezin's residence and seized his laptop computer. A forensic analysis of the laptop's hard drive indicated that it contained approximately thirty-five photographs and seventeen video files (equivalent to 1,275 images) depicting prepubescent males engaged in sexually explicit conduct.

## B. Procedural History

On January 8, 2013, a grand jury in the Northern District of Ohio returned an indictment against Miezin on two counts: (1) knowingly distributing computer files containing visual depictions of real minors engaged in sexually explicit conduct, in violation of 18 U.S.C. § 2252(a)(2) ("Count One"); and (2) knowingly making false statements to a law-enforcement official, in violation of 18 U.S.C. § 1001(a)(2) ("Count Two"). On May 7, 2013, Miezin entered into a written plea agreement under which he pled guilty to Count One and the Government agreed to move to dismiss Count Two. The plea agreement contained the following stipulation as to the appropriate offense-level computation under the United States Sentencing Guidelines ("U.S.S.G."):

| Base Offense Level | 22 | § 2G2.2(a)(2) |
|---|---|---|
| Material involved a prepubescent minor | 2 | § 2G2.2(b)(2) |
| Distribution | 2 | § 2G2.2(b)(3)(F) |
| Sadistic/masochistic conduct or depictions of violence | 4 | § 2G2.2(b)(4) |
| Use of computer | 2 | § 2G2.2(b)(6) |
| 600 or more images | 5 | § 2G2.2(b)(7)(B) |
| Subtotal Before Acceptance of Responsibility | 37 | |

The plea agreement also contained the following explanatory provision regarding the distribution computation:

> For purposes of determining Defendant's statutory penalty and imprisonment range under the United States Sentencing Guidelines, Defendant and the Government agree that the offense involved distribution, but the distribution was **not** (1) for pecuniary gain; (2) for the receipt or expectation of a thing of value; (3) to a minor; (4) done to persuade, induce, entice, or coerce a minor to engage in illegal activity; or (5) intended to persuade, induce, entice,

coerce, or facilitate the travel of a minor engaged in prohibited sexual conduct. Therefore, a two-level increase is applicable pursuant to U.S.S.G. § 2G2.2(b)(3)(F).

Assuming a three-level reduction for acceptance of responsibility, Miezin's offense level under the agreement would be 34, with a criminal history category of I, thereby yielding an advisory Guidelines range of 151-188 months' imprisonment.

A U.S. Probation Officer submitted a final presentence investigation report ("PSR") on August 21, 2013. The offense-level computations in the PSR reflected those in the plea agreement except as to the two-level enhancement for distribution under § 2G2.2(b)(3)(F). Unlike the plea agreement, the PSR recommended a five-level "thing of value" enhancement under § 2G2.2(b)(3)(B) for "distribution for the receipt, or expectation of receipt, of a thing of value, but not for pecuniary gain." In support of this recommendation, the PSR emphasized that Miezin "intentionally sought out child pornography material through chat conversations or by viewing other Gigatribe users['] shared folders and selecting images and video files that fell into these categories." Accordingly, the PSR recommended a total offense level of 37, assuming a three-level reduction for acceptance of responsibility, and a criminal history category of I, thereby yielding an advisory Guidelines range of 210-240 months' imprisonment.

On August 22, 2013, Miezin filed a sentencing memorandum requesting a downward variance in the advisory Guidelines range of 151-188 months, in which he detailed his personal background, his efforts at post-offense rehabilitation, and his strong familial and social support system. On September 20, 2013, the Government responded with a sentencing memorandum opposing Miezin's request for a downward variance and analyzing the factors set forth in

18 U.S.C. § 3553(a).[1] Specifically, in support of its argument that a "lengthy" sentence in this case would be necessary to effect adequate deterrence, the Government footnoted a portion of the application notes accompanying U.S.S.G. § 2G2.2(b)(3)(B). The Government argued that "[t]he harm caused by child pornography is not because money is exchanged but because children are the commodity that is bargained and exchanged."

The district court conducted a sentencing hearing on September 26, 2013. At the hearing, the court acknowledged the parties' agreement but accepted the PSR's recommendation that a five-level enhancement should be applied pursuant to U.S.S.G. § 2G2.2(b)(3)(B). (*See* R. 43 at PageID 368 ("The five levels will apply vis-à-vis the two. I will acknowledge the parties' agreement, but . . . the recommendation of the parties is not binding on the court . . . .").) Specifically, the court rejected Miezin's argument that an explicit quid pro quo—not merely *hoping* to receive child pornography as a barter—is necessary in order for the § 2G2.2(b)(3)(B) enhancement to apply. The court highlighted Miezin's Gigatribe chat conversations in which he asked for prohibited pictures. The court calculated an advisory Guidelines range of 210 to 262 months, while acknowledging that the parties' agreement called for a range of 151 to 188 months.

Before overruling Miezin's objection, the court solicited the Government's view as to why the two-level enhancement set forth in the plea agreement was appropriate. The Government responded:

---

[1] The Government's sentencing memorandum highlights the following excerpt of a Gigatribe chat conversation from January 21, 2010, in which Miezin, using the screen name "jakedoby," sent and requested illegal images:

| | |
|---|---|
| babyboyfucker19: | any baby pics |
| jakedoby: | Sends image file ending in 1349205_3, Prepubescent male, naked from the waist down lying on his back while a penis is inserted into his anus. |
| babyboyfucker19: | mmm nice reminds me of last baby boy I fucked |
| jakedoby: | nice and tight |
| babyboyfucker19: | it was only 2hours ago I fucked a baby |
| jakedoby: | *any pics* |

Your Honor, I would first indicate that as the court noted, I did enter into a plea agreement where I agreed to recommend a two-level distribution enhancement.

Factually, I would disagree with defense counsel's representation that this is like all other peer-to-peer cases. Gigatribe is very different than other peer-to-peer networks, in that it is an exclusive invitation[-]only network that is created by the user, which suggest[s] some level of vetting that would occur beforehand before you would allow someone into your inner circle where you intended to share child pornography.

I believe that in our pretrial discussions and in our negotiations, there was a discussion similar to the one raised by defense counsel as to whether or not there was a direct quid pro quo type of conversation.

And I would agree with the representations of the court that clearly he's sending out images, and there is that one particular reference of asking for images, specifically asking for images of the child rape.

It was I would confess merely a negotiation tactic in order to agree to the two levels rather than the five levels, feeling that it was not as clear cut as some of the cases that I have seen . . . where there is a more specific discussion about "If you send me this," or "If you give me your password to your images, I will give you my password to my images." Although I can respectfully see the position of pretrial and the comments of the court, I've made those same observations myself.

Prior to imposing Miezin's sentence, the district court had the following exchange with the Government:

[THE GOVERNMENT]: . . . we're asking for a sentence in the guideline range as calculated by the court.

THE COURT: Just so it's clear, you're asking for a sentence within the parties' plea agreement, 34, 151 months to 180 months?

[THE GOVERNMENT]: Yes, Your Honor. I entered into that agreement and I stand by my agreement.

The court sentenced Miezin to 168 months' imprisonment, noting that the sentence was "within the range that the parties have computed, the 151 to 188," and "a variance below the advisory guideline range that had been originally set forth in this case."

The district court entered final judgment on October 10, 2013. Miezin timely appealed his 168-month sentence on October 17, 2013.

## II. ANALYSIS

We first address Miezin's argument that the Government breached the plea agreement. We then address Miezin's argument that the district court erred in applying a two-level "thing of value" enhancement.

### A.      Breach of the Plea Agreement

Miezin first argues that the Government breached the plea agreement. The law regarding alleged breaches of plea agreements is well settled in the Sixth Circuit. As summarized in *United States v. Moncivais*:

> The construction of a plea agreement "presents a question of law which this court reviews *de novo*." *United States v. Fitch*, 282 F.3d 364, 366 (6th Cir. 2002) (citing *Lancaster Glass Corp. v. Philips ECG, Inc.*, 835 F.2d 652, 658 (6th Cir. 1987)). Plea agreements are contractual in nature, and as such, courts are guided by general principles of contract interpretation when construing plea agreements. *See United States v. Mandell*, 905 F.2d 970, 973 (6th Cir. 1990). Plea agreements are to be enforced according to their terms. "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York*, 404 U.S. 257, 262 . . . (1971). Because a defendant obtains a plea agreement only at the expense of his constitutional rights, "prosecutors are held to meticulous standards of performance." *United States v. Vaval*, 404 F.3d 144, 152-53 (2d Cir. 2005). "Satisfying this obligation requires more than lip service on a prosecutor's part. The *Santobello* rule 'proscribes not only explicit repudiation of the government's assurances, but must in the interests of fairness be read to forbid end-runs around them.'" *United States v. Saxena*, 229 F.3d 1, 6 (1st Cir. 2000) (brackets removed) (quoting *United States v. Voccola*, 600 F. Supp. 1534, 1537 (D.R.I. 1985)). The Court will thus construe "[a]mbiguities in a plea agreement . . . against the government." *Fitch*, 282 F.3d at 367 (citing *United States v. Randolph*, 230 F.3d 243, 248 (6th Cir. 2000)).

492 F.3d 652, 662 (6th Cir. 2007). "Questions regarding the content of the plea agreement are questions of fact, which this court reviews for clear error. Whether the government's conduct violated the agreement is a question of law, to be reviewed *de novo*." *United States v. Fields*, 763 F.3d 443, 453 (6th Cir. 2014) (citation omitted).

### 1. *Sentencing Memorandum*

Miezin argues that the Government breached the plea agreement in its sentencing memorandum by arguing that Miezin distributed child pornography with the expectation of receiving a thing of value in return—i.e., more child pornography. The Government responds that its sentencing memorandum—which it submitted in opposition to Miezin's request for a downward variance—did not request a five-level "thing of value" enhancement under U.S.S.G. § 2G2.2(b)(3)(B). Specifically, the Government contends that its citation to § 2G2.2(b)(3)(B) in a footnote "was only . . . for definitional purposes" and that "the government's use of a footnote in its sentencing memorandum to define statutory terms does not constitute an argument in favor of the five-level enhancement." (Appellee's Br. at 18.) The record supports the Government's argument.

"In determining whether a plea agreement has been broken, the court should look to what the defendant reasonably understood when he entered into the agreement. The most persuasive evidence of what a defendant reasonably appreciated as his bargain is found in the plain language of the court-approved agreement." *Fields*, 763 F.3d at 453 (citations omitted) (quoting *United States v. Herrera*, 928 F.2d 769, 771 (6th Cir. 1991); *United States v. Phibbs*, 999 F.2d 1053, 1081 (6th Cir. 1993)) (internal quotation marks omitted). The relevant portion of the plea agreement in this case states that "[Miezin] and the Government agree that the offense involved distribution, but the distribution was **not** . . . for the receipt or expectation of a thing of value." This language indicates that Miezin expected the Government to request a two-level

enhancement under § 2G2.2(b)(3)(F), rather than a five-level enhancement under § 2G2.2(b)(3)(B).[2]

The Government's sentencing memorandum did not breach this portion of the agreement. At no point in the memorandum did the Government suggest that a five-level enhancement under § 2G2.2(b)(3)(B) was the appropriate course for the district court to take. Rather, in analyzing the deterrence factor set forth in 18 U.S.C. § 3553(a)(2)(B), the Government cited § 2G2.2(b)(3)(B) by reference. There is no indication anywhere in the memorandum that the Government was asking the district court to apply a five-level enhancement contrary to the two-level enhancement to which the parties agreed. *Cf. Moncivais*, 492 F.3d at 665 ("Because there is no indication that the government recommended to the probation office that Defendant receive an enhanced sentence, we hold that the government did not violate its obligations under the Agreement. This is true notwithstanding the fact that the government provided factual information to the probation office that caused that office to recommend that the district court enhance Defendant's sentence."). Instead, the Government was responding to Miezin's request for a downward variance, seeking to ensure that he did not receive a sentence tantamount to "a mere slap on the wrist," but rather a sentence within "the properly calculated Guidelines range"—i.e., the agreed-upon range of 151-188 months.[3] (Appellee's Br. at 21.) *Cf. United States v. Moschella*, 727 F.3d 888, 892 (9th Cir. 2013) ("[T]he prosecutor's sentencing arguments were a fair response to Defendant's request for a downward variance from the low-

---

[2] Notably, however, the plea agreement explicitly states that "[t]he parties have no agreement about the sentencing range to be used or sentence to be imposed in this case, other than to stipulate to the computation of the advisory Sentencing Guidelines offense level. Each party is free to recommend whatever sentence it believes to be appropriate."

[3] The Government's unequivocal statements at the sentencing hearing bolster our conclusion that the Government was seeking to enforce the agreed-upon range of 151-188 months. (*See, e.g.*, R. 43 at PageID 462 ("THE COURT: Just so it's clear, you're asking for a sentence within the parties' plea agreement, 34, 151 months to 180 months? [THE GOVERNMENT]: Yes, Your Honor.").)

end of the advisory Guidelines range. . . . [I]n arguing against a downward variance, the prosecutor affirmatively recommended . . . that the district court impose the agreed-upon . . . sentence.").

Accordingly, the Government's sentencing memorandum did not breach the plea agreement.

### 2. *Sentencing Hearing*

Miezin also argues that the Government breached the plea agreement at the sentencing hearing. Specifically, he asserts that the Government should not have: (1) argued that he should receive a harsher sentence because he distributed child pornography with the expectation of receiving it in return; (2) agreed with the district judge that a five-level enhancement under § 2G2.2(b)(3)(B) was appropriate; and (3) stated "reluctantly" that the Government was bound by its agreement to a two-level enhancement. The Government responds that the probation department—not the Government—requested a five-level enhancement. The Government further contends that it disagreed with Miezin's argument that an explicit quid pro quo is required for a five-level enhancement to apply under § 2G2.2(b)(3)(B) only after the district court asked it to weigh in, and after emphasizing that the Government was bound by its agreement to a two-level enhancement. The Government's argument prevails.

The following exchange at the sentencing hearing indicates that the Government unequivocally supported the recommendations in the plea agreement:

> [THE GOVERNMENT]: Your Honor, the government's position in this case is that Mr. Miezin deserves a guideline sentence, not just based on the guidelines that apply here, but certainly in the analysis of the 3553(a) factors and the nature of what he did here and how he contributed to the perpetuation of the abuses of those kids.
> For that reason, we're asking for a sentence in the guideline range as calculated by the court.

> THE COURT: Just so it's clear, you're asking for a sentence within the parties' plea agreement, 34, 151 months to 180 months?
>
> [THE GOVERNMENT]: *Yes, Your Honor. I entered into that agreement and I stand by my agreement.*

It is difficult to imagine a more explicit endorsement of the advisory Guidelines range calculated in the plea agreement.

This case is similar to *United States v. Mason*, in which the defendant argued "that the government violated the plea agreement by discussing the sentencing-recommendation provision of the plea agreement in a way that, in effect, urged the district court to disregard it." 410 F. App'x 881, 889 (6th Cir. 2010). In that case, the prosecutor emphasized at the sentencing hearing that the negotiated sentencing range was "significantly below the advisory guideline range" and involved a "market motive," but noted that the government would "stick by [the negotiated sentencing range] even though arguably we might have grounds not to." *Id.* at 885. This Court found no breach, emphasizing that the full sentencing colloquy did not demonstrate "that the government was attempting to avoid upholding its part of the bargain." *Id.* at 890. To the contrary, the government in *Mason* "explicitly recommended" a sentence within the advisory Guidelines range to which the parties had agreed. *Id.*

Similarly here, although the Government acknowledged the potential appropriateness of a five-level enhancement under § 2G2.2(b)(3)(B) (*see* R. 43 at PageID 367 ("I can respectfully see the position of pretrial and the comments of the court")), it nevertheless explained the reasoning behind its agreement to a two-level enhancement and requested a sentence within the resultant advisory Guidelines range. (*See id.* ("It was I would confess merely a negotiation tactic in order to agree to the two levels rather than the five levels, feeling that it was not as clear cut as some of the cases that I have seen . . . ."); PageID 462 ("I entered into that agreement and I stand by my agreement.").)

Contrary to Miezin's position, the Government's explanation of the negotiating process indicates that it supported the two-level enhancement and did not believe that Miezin's case was a "clear cut" candidate for a five-level enhancement. Unlike in *United States v. Canada*, 960 F.2d 263, 270 (1st Cir. 1992), where the prosecutor "conspicuously undermin[ed] its agreed position," "[t]he prosecutor's statements in this case do not rise to the level of 'inject[ing] material reservations about the agreement.'"[4] *Mason*, 410 F. App'x at 890 (second alteration in original) (quoting *Canada*, 960 F.2d at 270); *see also Moschella*, 727 F.3d at 892 (distinguishing *Canada* in that the prosecutor recommended the agreed-upon range and made arguments at sentencing that "were directed to the specific objective identified in and permitted by the plea agreement.").

Accordingly, the Government did not breach the plea agreement at Miezin's sentencing hearing.

### B.      Application of the Two-Level "Thing of Value" Enhancement

We review challenges to the procedural and substantive reasonableness of a criminal sentence under the deferential abuse-of-discretion standard. *United States v. Kamper*, 748 F.3d 728, 739 (6th Cir. 2014); *Gall v. United States*, 552 U.S. 38, 51 (2007). To determine whether a sentence is procedurally reasonable, we review, inter alia, "whether the district court properly calculated the Guidelines range." *United States v. Battaglia*, 624 F.3d 348, 350-51 (6th Cir. 2010). "If the district court misinterprets the Guidelines or miscalculates the Guidelines range, then the resulting sentence is procedurally unreasonable." *United States v. Stubblefield*, 682 F.3d

---

[4] In *Canada*, the plea agreement required the government to recommend that the court impose a 36-month sentence. 960 F.2d at 268. At the sentencing hearing, however, the prosecutor never recommended a 36-month sentence and made comments undercutting such a recommendation, such as, "It is important, the government feels, that a very strong message be sent by the Court." *Id.* at 269. The court in *Canada* stated that, had the government affirmatively stated its recommendation of a 36-month sentence, "and had it refrained from conspicuously undermining its agreed position, we would have accepted this, without more, as constituting minimal fulfillment of its obligations." *Id.* at 270.

502, 510 (6th Cir. 2012). Miezin challenges only the procedural reasonableness of his sentence by asserting that the district court erroneously applied a five-level enhancement under § 2G2.2(b)(3)(B). "The court's legal interpretation of the Guidelines [is] reviewed de novo, but its factual findings are reviewed under the clearly erroneous standard." *Id.* (quoting *Battaglia*, 624 F.3d at 351) (internal quotation marks omitted).

Sentencing factors must be established by a preponderance of the evidence. *United States v. Ross*, 703 F.3d 856, 884 (6th Cir. 2012). Whether the five-level "thing of value" enhancement under § 2G2.2(b)(3)(B) applies to Miezin's case is a factual determination subject to clear-error review. *See United States v. Mabee*, 765 F.3d 666, 674-75 (6th Cir. 2014) (applying the clear-error standard to a district court's application of the § 2G2.2(b)(3)(B) enhancement); *see also United States v. Burman*, 666 F.3d 1113, 1118-19 (8th Cir. 2012) (upholding on clear-error review a district court's application of the § 2G2.2(b)(3)(B) enhancement where the defendant made extensive use of the Gigatribe program). In conducting this review, "we examine whether there is evidence, direct or circumstantial, that [the defendant] reasonably believed that he would receive something of value by making his child pornography files available for distribution through a peer-to-peer network." *Mabee*, 765 F.3d at 674 (alteration in original) (quoting *United States v. Binney*, 562 F. App'x 376, 379 (6th Cir. 2014)) (internal quotation marks omitted). The § 2G2.2(b)(3)(B) enhancement "does not apply merely because a defendant used a file-sharing program, but extensive use of the program resulting in several hundred images will weigh in favor of the enhancement." *Id.* (quoting *United States v. Emmons*, 524 F. App'x 995, 999 (6th Cir. 2013)) (internal quotation marks omitted).

Miezin argues that the district court improperly applied the five-level enhancement by finding that, in distributing child pornography, he expected—not merely hoped—that he would receive it in return. The Government responds that:

> Miezin's use of Gigatribe to distribute child pornography, to store it in his own extensive files, to invite others to share his files, and to ask for child pornography files in return constitutes the direct and circumstantial evidence necessary to show that he reasonably believed and expected that he would receive something of value by making his child pornography files available for distribution.

(Appellee's Br. at 29.) The Government's argument prevails.

The Sentencing Guidelines prescribe a base offense level of 22 for a violation of 18 U.S.C. § 2252(a)(2). *See* U.S.S.G. § 2G2.2(a)(2); *Battaglia*, 624 F.3d at 351. A sentencing court may apply a five-level enhancement if the offense involved "[d]istribution for the receipt, or expectation of receipt, of a thing of value, but not for pecuniary gain." U.S.S.G. § 2G2.2(b)(3)(B). According to the law of this Circuit, "[t]hat five-level enhancement applies to trading or attempted trading of child pornography—i.e., it applies where a defendant distributes child pornography because he or she has received child pornography or expects to receive child pornography in return." *Battaglia*, 624 F.3d at 351 (citing U.S.S.G. § 2G2.2(b)(3)(B) cmt. n.1). Analogous Sixth Circuit cases demonstrate that the district court did not clearly err when it applied the five-level enhancement in Miezin's case.

In *United States v. Mauck*, the Court considered whether the district court improperly applied the five-level enhancement to a defendant who used the social networking site "Mbuzzy.com" to send and receive sexually explicit images of children. 469 F. App'x 424, 426-27 (6th Cir. 2012). Specifically, the defendant in *Mauck* engaged in online conversations with undercover investigators over the course of several months regarding the exchange of sexually explicit pictures of young children. The Court found these facts "more than sufficient to support

the court's finding that [the defendant] expected to receive images in return for the images he sent," noting that "[t]he Guidelines' definition of 'thing of value' is very broad." *Id.* at 427. Similarly, in *United States v. Hardin*, the Court examined a challenge to the application of the § 2G2.2(b)(3)(B) enhancement. 437 F. App'x 469, 471 (6th Cir. 2011). In that case, the defendant used his work computer to access a peer-to-peer file-sharing program called "LimeWire," and downloaded fourteen videos and several hundred pictures of children engaged in sexual activity. *Id.* The computer also contained several series of chats in which the defendant solicited sexual contact with children. *Id.* The Court held that the defendant's "sophisticated and extensive use of LimeWire was sufficient . . . to support the district court's imposition of the five-level enhancement in question." *Id.* at 474; *see also Burman*, 666 F.3d at 1119 (noting that the defendant committed his offenses "using a substantial level of technical sophistication.").

Miezin's case is indistinguishable from these cases. His illegal activity on Gigatribe spanned the course of ten months and, on eleven separate occasions, undercover federal law-enforcement officers accessed depictions of minors engaged in sexually explicit conduct from his computer. In total, agents recovered thirty-five photographs and seventeen videos (equivalent to 1,275 images) from Miezin's computer. Miezin also engaged in numerous Gigatribe chat sessions in which he distributed and requested illegal depictions of minors engaging in sexual activity. As noted by the district court at the sentencing hearing:

> This case is a bit different because the defendant is actively discussing by chats the sharing of pictures. . . . [O]ne of the individuals that the defendant was communicating with via chat said, "It was only two hours ago that –" and I will delete the term "– a baby."
> And the defendant . . . responds, "Any pics?" He's asking for pics. . . . [T]he defendant is discussing his likes and dislikes. And during the course of that conversation, he sends images of two prepubescent males naked on a bed . . . .

In light of the foregoing evidence, the district court's application of the five-level "thing of value" enhancement under § 2G2.2(b)(3)(B) was not clear error. *Cf. Mabee*, 765 F.3d at 675 (upholding the § 2G2.2(b)(3)(B) enhancement even where the defendant "*did not* communicate with other people as to the availability of the files" (emphasis added) (internal quotation marks omitted)). The record amply supported the district court's decision.

Miezin's citation to authority from our sister circuits does not demand a contrary conclusion. In *United States v. McManus*, for example, the Fourth Circuit rejected a per se rule that the mere use of a peer-to-peer file-sharing system like Gigatribe, without more, is sufficient evidence of an expectation of receipt of a thing of value under § 2G2.2(b)(3)(B). 734 F.3d 315, 320-22 (4th Cir. 2013) (emphasizing that "[t]he Government submitted no evidence that [the defendant] screened possible friends based on their likelihood of possessing valuable files before inviting them or accepting their invitations."); *see also United States v. Spriggs*, 666 F.3d 1284, 1288 (11th Cir. 2012) ("[A defendant's] hope that a peer would reciprocate his generosity does not amount to a transaction conducted for 'valuable consideration.'"); *United States v. Vadnais*, 667 F.32d 1206, 1209 (11th Cir. 2012) ("There must be some other evidence, whether direct or circumstantial, that a defendant reasonably believed that he would receive something of value by making his child pornography files available for distribution through a peer-to-peer network."). But the rule in the Sixth Circuit also states that the five-level enhancement does not apply merely because a defendant used a file-sharing program. *See Mabee*, 765 F.3d at 674 ("Sharing child pornography on a file-sharing program alone does not trigger the trading enhancement."). This Court instead determines whether the enhancement is appropriate on a case-by-case basis. *Hardin*, 437 F. App'x at 474. The inquiry is whether the defendant's "sophisticated and

extensive" use of the file-sharing program in question subjects him to the enhancement.[5] *Id.* In

Miezin's case, we find that it does.

Accordingly, the district court did not commit clear error when it applied the five-level

"thing of value" enhancement to Miezin's sentence pursuant to U.S.S.G. § 2G2.2(b)(3)(B).

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM** Miezin's 168-month sentence.

---

[5] Recent Eleventh Circuit decisions have tracked this analysis. *See, e.g.*, *United States v. Bailey*, 494 F. App'x 13, 15 (11th Cir. 2012) (per curiam) ("[T]he district court did not plainly err in applying the five-level sentence enhancement. The online communication between [the defendant] and the undercover agent, . . . as well as [the defendant's] protective file distribution habits, sufficiently link Bailey's distribution of child pornography with the expectation of receiving child pornography in return."); *United States v. Cote*, 482 F. App'x 373, 376 (11th Cir. 2011) (per curiam) ("[T]he district court did not err by increasing [the defendant's] offense level by five levels under § 2G2.2(b)(3)(B). [The defendant] posted material involving the sexual exploitation of a minor on the Internet and made it available for others to view. [He] knew how to use Gigatribe to search for and download child pornography, actually downloaded such material, stored his child pornography in a shared-file area available for Internet download, and invited others to download his files. . . . [E]ven without an explicit quid pro quo agreement with another distributor of child pornography, a person may engage in such conduct with the reasonable expectation of an exchange."). Moreover, like the defendant in *Bailey*, Miezin also engaged in so-called "protective" distribution behavior by repeatedly downloading and deleting Gigatribe as necessary.